## Williams *versus* Davis *et al.*

1. After ejectment against husband and wife for land alleged to have been fraudulently conveyed to her by the husband, he died and his heir was substituted as a party. *Held*, that the heir was a witness for defendants, under the Act of April 15th 1869.

2. Judgments had been recovered after the conveyance against a firm, the the husband being named as a member. One of the firm called by plaintiff, testified that the husband had never been one of the firm, and had nothing to do with the debt. *Held*, that evidence of declarations of the husband to show that he had been a member of the firm were inadmissible.

3. At the time of the conveyance to the wife, the land was subject to a mortgage given by the husband for part of the purchase-money. This was not such a debt as would render the conveyance void against subsequent creditors.

4. Fraud consists in intention, carried out and evidenced by hurtful acts.

5. At the time of the conveyance the husband intended to enter into business said to be hazardous; he did not enter into such business. The conveyance was not thereby void.

6. *It seems*, that an expectation of future indebtedness will not render a voluntary conveyance void as against subsequent creditors, without a purpose to keep the property from such creditors.

7. Where a grantor about the time of a voluntary conveyance enters into hazardous business, or immediately contracts large debts, the inference is that his motive was to withdraw the property from subsequent creditors; but the question is for the jury.

January 19th 1871. Before Thompson, C. J., Agnew and Williams, JJ. Sharswood, J., at Nisi Prius.

Error to the Court of Common Pleas of *Schuylkill county :* Of January Term 1870, No. 146.

This was an action of ejectment for a lot on Minersville street, in Pottsville, commenced November 21st 1863, by Daniel Williams, against Robert T. Davis and Elizabeth Davis, his wife. Robert T. Davis having died, his death was suggested May 15th 1865, and his daughter, Mary Smith, and his son Shadrach Davis, his heirs at law, were substituted. It did not appear by which party the suggestion and substitution had been made.

The premises had been conveyed on the 8th of July 1856, to Robert T. Davis by Edward T. Taylor. On the 31st of October Davis conveyed them to Samuel C. Harris, " in trust to convey them immediately" to his wife, Elizabeth C. Davis ; on the same day Harris conveyed them to Mrs. Davis. On the 4th of April 1859, Williams, the plaintiff, recovered a judgment for $1594.91 against Davis and C. W. Edwards as partners ; issued an execution on the judgment and bought Davis's interest in the premises for $100 ; the sheriff's deed was acknowledged June 11th 1863. Williams then brought this ejectment, alleging that the conveyance to Mrs. Davis was in fraud of her husband's creditors and that the title remained in Davis.

[Williams *v.* Davis.]

The cause was tried October 26th 1869, before Ryon, P. J.

The plaintiff gave in evidence the deed from Taylor to Davis, consideration $3700; also mortgage of same date from Davis to Taylor on the premises to secure a bond for $1700, the remainder of the purchase-money, payable July 8th 1859. Assignment of bond and mortgage February 24th 1864, to William Harris, for the consideration of $1654.

He also gave in evidence a number of judgments against Davis, from August 4th 1857, until January 30th 1858, amounting in the whole to about $3800. One judgment was in favor of Tobias Wintersteen against Joseph Johnson, John Waugh and Robert T. Davis, as the firm of Johnson & Waugh; another in favor of M. I. Siebert against the same defendants.

He then called William Harris, who testified that he had bought the mortgage at the request of Davis, as the owners were pressing payment, and Davis thought he thus would get more time to pay. Davis was then living in the house; Mrs. Davis had paid witness $700, besides interest on the mortgage; Davis had paid none; fourteen months' interest were then due.

John Reese testified that he, David Lloyd and Davis had been partners in gold digging in California in November 1854; they had bought a claim for $1500 and another for $500; they had no money, and borrowed money to make the payments; they had $500 or $600 each when they came back, after paying what they had borrowed; they got the money for the sale of their claims.

David Lloyd testified that Davis was treasurer of the firm; their last settlement was in April 1856; Davis had $1700, which was divided; witness had about $600; Davis had no more chance than he; Davis and witness had at first about $250 each, and afterwards borrowed $1500; Davis worked in other claims, but the three were equally interested in them.

Peter D. Luther testified that Davis and Charles W. Edwards, in August 1857, entered into partnership in a contract for mining coal, at so much a ton, for Rogers, Sinnickson & Co.; coal mining was a risky business; they gave a judgment to Rogers, Sinnickson & Co. for some mules, and as a guaranty for properly working the colliery; the judgment was on some property on Minersville street, Pottsville, and it was afterwards ascertained the deed was in Mrs. Davis's name.

Joseph Johnson testified that Davis had no interest in the firm of Johnson & Waugh; witness and Davis, as accommodation drawers, gave Waugh two notes of $400 each, to enable Waugh to buy goods; Waugh passed them off and ran away; Davis had nothing to do with the Wintersteen and Siebert judgments; witness had paid both.

Daniel Williams, the plaintiff, was called as a witness. He

said he had a talk with Davis as to the business he was in.   It was then proposed to prove by the witness " that in the spring of 1857, while Davis was occupying the property in suit, that he told the witness he was then engaged in business at Eagle Hill with Joseph Johnson and John Waugh.   This is offered to show that Davis was at the time one of the firm of Johnson & Waugh."

The offer was objected to by the defendants, rejected, and a bill of exceptions sealed.

The plaintiff then rested.

Charles W. Edwards was called by the defendant, and testified that through his importunity Davis went into the coal business with him in July or August 1857 ; Davis and witness had no capital.

David Davis, a brother of Robert, testified that Robert did not intend to stay in California, " he intended to get a little property for his family and then return;" he was going back to the gold diggings ; he had no property beside this in dispute.

Shadrach Davis, one of the substituted defendants, was offered as a witness for defendants.   He was objected to by the plaintiff, " on the ground that he was a party to the record, and not within the Act of 15th April 1869."   He was admitted by the court and a bill of exceptions sealed.

He testified that his father returned from California in the spring of 1856 ; he had some money ; his mother had no money but what was sent to her from California and what was saved; his father bought the premises to maintain his family ; he intended to go back to California; he was sick two or three months ; some one enticed him to go into business here ; it " was quite a sudden affair, it was talked of and he went right into it;" he gave up the idea of going to California when he went into the coal business ; during his sickness he intended to go back to California as soon as his health was fit ; he said his intention was to go into the gold business ; he kept up the idea until he went into the coal business.

The defendants then gave in evidence a deed dated May 15th 1856, from Benjamin L. Titus to Robert T. Davis, for a lot in Pottsville, for the consideration of $500, and rested.

The plaintiffs, in rebuttal, called Shadrach Davis, who testified that so far as he knew his father conveyed the Titus property to William Fox for advances to him when he went into the coal business ; he had bought the house immediately after his return from California with money he brought home with him.

Plaintiff proposed to prove " by the testimony of Shadrach Davis and others, that when Robert T. Davis returned from California he had no property or money but that which he made in California as a partner with Lloyd & Reese, less than $2000, alleging that was the whole of the proceeds of the partnership, and that the excess above the amount divided as aforesaid, be-

[Williams *v.* Davis.]

longed, one-third to Reese and one-third to Lloyd. This is offered to show where the money came from with which he purchased the property from B. N. Titus, and that he was indebted for that amount and upwards to his partners Lloyd & Reese."

Defendants objected " that the testimony offered is irrelevant and not rebutting."

The offer was rejected, and a bill of exceptions sealed.

S. Davis further testified that his father left no property at his death except what was in possession of his wife.

William Fox testified that he bought the Titus property from Davis for $500 ; its worth at the time of trial was from $500 to $700.

The deed to Fox was dated August 8, 1857. The parties submitted points hereafter stated.

The court charged: * * * " If Davis was solvent at the time he made the conveyance to a trustee to convey to his wife, he had a right to settle a reasonable amount of his property upon her for her support, if at the time he made the conveyance he did not contemplate going into business in which he might contract debts. The fact that he did go into business subsequently, would not invalidate the conveyance, unless the conveyance was made at a time when Davis contemplated going into some business which might be termed hazardous, and in which he might incur debts ; and to withdraw the estate from such indebtedness in the latter case, the conveyance would be void as against the debts of Davis incurred subsequent to the conveyance.

" If, therefore, Davis made this conveyance at the time (31st Oct. 1856), he contemplated going into business, though he was solvent at the time the conveyance was made, in which indebtedness might be incurred by him, the conveyance to his wife was void, and the plaintiff would be entitled to recover. If, however, the conveyance was made for the purpose of giving a reasonable amount of property to his wife, as a reasonable settlement for her maintenance and support, and when he was solvent, and at the time did not contemplate going into business, the conveyance could not be avoided by his subsequent creditors. The law will not sustain a conveyance made in view of future business, in which the possible chances might be such as to create an indebtedness. This is hazardous business, because the result may be insolvency."

The plaintiff's points with the answers were :

1. If the jury believe that Davis gave his personal obligation for the balance of purchase-money payable to his vendor, Edward T. Taylor, viz. : for $1700, for the property in suit, and that he made no provision for its payment by any personal assumption of the debt by the purchaser, and had not then any other property or means out of which to pay said debt, the same not fully maturing

until 1859, the conveyance to the wife was fraudulent and void as against creditors, and the plaintiff is entitled to recover.

Answer : " Negatived, with the remark, that the balance of the purchase-money (unpaid) was secured to Taylor upon the property. The conveyance did not prejudice the claim of Taylor, and therefore it was not such a debt as would, under this conveyance, be void as against subsequent creditors, for that reason alone."

2. If the jury believe that at the time R. T. Davis conveyed the property in question to his wife, he intended to return again to California to engage in gold mining, as he had done before, as testified to by his brother David Davis, and his son Shadrach Davis, the conveyance to his wife was void, as against the plaintiff in this suit.

Answer : " Davis did not go to California, nor did he go into gold mining ; but if he did intend to go into gold mining, it would be a question to be determined by the jury whether it was hazardous business or not. We, therefore, negative the point."

3. It was Davis's intention at the time he made the conveyance to his wife, and not the subsequent fulfilment or non-fulfilment of it, that constitutes a test of the validity of his conveyance to his wife ; and if Davis intended at the time he made such conveyance, to enter into any hazardous business, whether he subsequently engaged in it or not, the conveyance is void as to the plaintiff.

4. Under all the evidence in the case the plaintiff is entitled to recover.

These two points were negatived.

5. If the jury believe that at the time R. T. Davis conveyed the property in suit to his wife, it constituted the whole, or nearly the whole, of his estate, and that he did it with a view of making a settlement for his family, and intended at the same time to return to California, to engage in gold mining, as he had done before, and in which business indebtedness might be contracted, the conveyance to his wife was void, as against the present plaintiff, and he is entitled to recover.

Answer : " We negative this point. The business of gold mining may create an indebtedness, and yet not such as to vitiate the conveyance, for the reason that the business may have ample assets, or may not be hazardous, and possible insolvency follow. A man may make a settlement of a reasonable portion of his estate upon his wife, even though he may have some other debts, if his other property is ample to satisfy all just demands."

The following were points of the defendants :—

1. Under the evidence in this case, Robert T. Davis was solvent and without any debts against him at the time he conveyed the property in question to Harris for the purpose of having the same conveyed to his wife.

[Williams v. Davis.]

2. There is no proof that Davis, at the time of said conveyance, contemplated going into any business of a hazardous character, or that required him to obtain credit.

The court affirmed the 1st and answered the 2d as follows:—

" The defendant, Robert T. Davis, contemplated going to California, as the evidence shows, at the time the conveyance was made to his wife (31st October 1856). If he intended to go to California, and there go into mining gold, and such business would be hazardous, then against such debts the conveyance would be void. But was gold mining such hazardous business as would be likely to create debts and be termed hazardous? If it is, then this point is negatived, and verdict should be for plaintiff; if not hazardous, as before explained to you, then the point is affirmed."

The verdict was for the defendants.

The plaintiff took a writ of error and assigned for error:

1. The admission of Shadrach Davis as a witness.

2 and 3. Rejecting the plaintiff's offers of evidence.

4–7. The answers to the plaintiff's 1st, 2d, 4th and 5th points.

8 and 9. The answers to the defendants' points.

*F. W. Hughes* (with whom was *C. Little*) for plaintiff in error. —As to the 1st assignment referred to Act of April 15th 1869, Pamph. L. 30. Davis was himself bound to pay the bond for the purchase-money of the lot, and therefore the sale to Harris was void: U. States *v.* Mertz, 2 Watts 406. The charge as a whole was calculated to mislead the jury, and was therefore erroneous: Reeves *v.* Del. & L. Railroad Co., 6 Casey 454. Where there is a question for the jury a binding direction is error: Strohl *v.* Levan, 3 Wright 177.

*J. W. Ryan* (with whom was *L. Bartholomew*) for defendants in error.—The declarations of Davis proposed to be proved were after the conveyances; were also against his wife and inadmissible: Kerkland *v.* Hepselgefser, 2 Grant 84; Cord on Married Women 1033; Jones *v.* McKee, 3 Barr 496; 1 Greenleaf Ev., Sect. 342; Snyder *v.* Snyder, 6 Binn. 483; Murphy *v.* Hubert, 4 j Harris 56; Smith *v.* Scudder, 11 S. & R. 325; Thomas *v.* Maddan, 14 Wright 261. When a debt is secured by a mortgage of the property, a voluntary conveyance does not tend to hinder and delay creditors: Stephens *v.* Olive, 2 Brooks' R. 90; Thomson *v.* Dougherty, 12 S. & R. 456. An unexecuted intention amounts to nothing: Wheaton *v.* Sexton, 4 Wheaton 503. Ridgway *v.* Underwood, 4 W C. C. R. 129.

The opinion of the court was delivered July, 3d 1872, by

WILLIAMS, J.—There was no error in the admission of Shadrach Davis as a witness on the part of the defendants. Though a party

[Williams *v.* Davis.]

to the record he was clearly competent under the provisions of the Act of 15th April, 1869. He did not claim any interest in the property as heir of his deceased father, or otherwise, and was therefore not within the exception to the act.

The declarations of Robert T. Davis in the spring of 1857, while occupying the property in suit, that he was then engaged in business at Eagle Hill with Joseph Johnson and John Waugh, offered for the purpose of showing that he was at the time one of the firm of Johnson & Waugh, were properly excluded. They were clearly irrelevant. Of what avail would it have been to the plaintiff to show that Davis was a member of the firm of Johnson & Waugh? It was not proposed to follow the offer with evidence tending to show that the firm had contracted debts for which Davis was responsible, nor by any other evidence that made the offer relevant. The judgments in favor of Wintersteen and Siebert were conclusive against Davis, and could not be impeached in this action, and it was not competent for the plaintiff to contradict the testimony of his own witness, Joseph Johnson. In no aspect of the case, then, were the declarations of Davis admissible, even if they tended to prove that he was a member of the firm of Johnson & Waugh.

Nor was there any error in rejecting the plaintiff's second offer. If it tended to show, as alleged, that Davis paid for the property purchased of Titus with the money belonging to the firm of which he was a member, and that he was indebted to his co-partners Lloyd & Reese for the amount, and also for their proportion of the residue of the money with which he returned from California when he bought the property in controversy; then it was evidence in chief, and it was no error to reject it when offered as rebutting evidence.

The court rightly refused to charge as requested in the plaintiff's first point. The unpaid purchase-money, secured by a mortgage on the property conveyed to the wife, was not such a debt as would render the conveyance void as against subsequent creditors. It could not have been intended to hinder, delay and defraud the vendor in the collection of the purchase-money, for the wife took the land subject to the lien of the mortgage given to secure its payment.

Nor was there any error in answering the plaintiff's second, third and fifth points in the negative. They are all based on the principle that the grantor's intention, at the time of making a voluntary conveyance, to engage in business that may be hazardous, or in which indebtedness may be incurred, is the test of its validity, whether such intention is subsequently fulfilled or not; and, therefore, if Davis at the time he conveyed the property to his wife intended to return to California and engage in gold mining, as he had done before, in which business indebtedness might be contracted, or to enter into any hazardous business, the conveyance to his wife was void as against the plaintiff, whether he

[Williams *v.* Davis.]

returned to California, or engaged in such hazardous business or not. It is undoubtedly true that there can be no fraud without a dishonest intent. But is dishonest intention the sole element of fraud ? If it is, then as suggested in Smith *v.* Smith, Murphy & Co., 9 Harris 371, it may be made out without proof of a single overt fraudulent act. And if none of its elements consist of an overt act, then the law requires no evidence of an overt act to establish it. But fraud does not consist in mere intention, but in intention carried out by hurtful acts. It consists of conduct that operates prejudicially on the rights of others, and is so intended : Bunn, Raiguel & Co. *v.* Ahl, 5 Casey 390. But mere intention, if not carried out, cannot work injury to the rights of others. What possible harm could Davis's intention to return to California and engage in the business of gold mining, however hazardous it might be, do the plaintiff, so long as it was not carried into effect ? And if he had returned and contracted debts in the prosecution of the business, it does not follow that the conveyance to his wife would be invalid as against subsequent creditors, unless it was his purpose in making it to withdraw the property from their reach. A mere expectation of future indebtedness, or even an intent to contract debts, if it be only an intent, not coupled with a purpose to convey the property in order to keep it from being reached by the creditors, will not, as it would seem, render a voluntary deed invalid as against such future creditors : Snyder *v.* Christ, 3 Wright 507. The court below, therefore, properly refused to instruct the jury as requested in the plaintiff's points.

We come now to the answers to the defendants' points, which are complained of as erroneous. The defendants' first point presented a question of fact and not of law, and for this reason the court might have declined to answer it. But there was no error in affirming it. Taking the affirmance in connection with the answer to the plaintiff's first point, the jury must have understood the court as saying that no such indebtedness of Davis had been shown as would avoid the conveyance to his wife.

Nor do we see that the plaintiff has had any good reason to complain of the answer to the defendants' second point. The court was there asked to charge that under the evidence in this case there is no proof that Davis, at the time of the conveyance, contemplated going into any business of a hazardous character, or that required him to obtain credit. And, in answer thereto, the learned judge told the jury that Davis contemplated going to California, as the evidence shows, at the time the conveyance was made to his wife. And if he intended to go to California and there go into mining gold, and such business would be hazardous, then against such debts the conveyance would be void. Whether gold mining was such business as would be likely to create debts,

[Williams *v.* Davis.]

and be termed hazardous, was a question which the court left to the jury with the instruction that if it was, then this point is negatived, and the verdict should be for the plaintiff; if not hazardous, as before explained, then the point is affirmed. We think the defendants had more reason to complain of this instruction than the plaintiff, for it made the validity of Davis's conveyance wholly dependent upon the character of the business in which he intended to engage, regardless of the fact whether or not it was his purpose in making the conveyance to withdraw the property from the reach of the debts which he might contract. It is undoubtedly true, where the grantor enters into a new and hazardous business about the time the conveyance is made, or contracts large debts immediately thereafter, that it may be fairly inferred that it was his motive in making the conveyance to withdraw the property from the reach of the debts subsequently incurred. But this is a question of fact, upon which the jury should be left to pass in determining the character of the conveyance. If the answer of the court was faulty in this respect, and not altogether consistent with the answers previously given to the plaintiff's points, the error did the plaintiff no possible harm, for it was more favorable to him than he had any right to expect. But the omission was supplied in the general charge in which the jury were instructed that "if Davis was solvent at the time he made the conveyance to a trustee to convey to his wife, he had a right to settle a reasonable amount of property upon her, for her support, if at the time he made the conveyance he did not contemplate going into business in which he might contract debts. The fact that he did go into business subsequently would not invalidate the conveyance, unless the conveyance was made at a time when Davis contemplated going into some business which might be termed hazardous, and in which he might incur debts; *and to withdraw the estate from such indebtedness;* in the latter case the conveyance would be void as against the debts of Davis incurred subsequent to the conveyance." Under these instructions the jury must have found that Davis, when he made the conveyance, did not intend to go into any business of a hazardous nature and to withdraw the property from the reach of the debts incurred in its prosecution. As there was no substantial error in the charge, and as there was evidence to justify the finding of the jury, the judgment must be affirmed.

Judgment affirmed.