## Nippes's Appeal.

1. A husband made a voluntary conveyance to his wife of land bound by a lien for the purchase-money due his grantor, not being otherwise indebted. *Held*, that the lien was not such a debt as would render the conveyance void against subsequent creditors, the wife having taken the land subject to the lien.

2. There being no evidence of a purpose to defraud creditors, the fact that it was all the property the husband owned was immaterial.

3. The husband as "agent" of the wife insured the building and personal property; a loss by fire having occurred, the insurance company in a suit against them to recover for the loss, paid the amount of loss into court; the creditors of the husband had no claim upon the money except for the premiums for insurance in case he had paid them.

4. A policy against fire is not an incident to the insured property; it is a special agreement with the insured against his own loss, sustained by fire, not that of any other person as grantee, creditor, &c.

March 20th 1874.   Before AGNEW, C. J., SHARSWOOD, MERCUR and GORDON, JJ.   WILLIAMS, J., at Nisi Prius.

Appeal from the Court of Common Pleas of *Montgomery county* : No. 42, to January Term 1874.

The proceedings in this case arose under the following circumstances, as found by the report of Charles H. Stinson, Esq., auditor.

On the 13th of April 1850, Jesse W. Ramsey conveyed to Daniel S. Nippes a tract of about 57 acres of land, the consideration was $1600, of which $700 were paid by his father, who made the contract for the land; the remaining $900 were secured by a judgment from Daniel S. Nippes to Ramsey.  On the 11th of August 1853, D. S. Nippes conveyed the premises to T. L. Young, the consideration in the deed being $1600.  On the 15th of the same August, Young conveyed the premises to Margaret Nippes, the wife of Daniel S. Nippes.  On the 12th of October 1867, John J. Hughes recovered a judgment against Daniel S. Nippes for $200.  On the 1st of March 1869, Samuel E. Hartranft recovered judgment against Nippes for $214.87.  On the 18th of September 1870, John Kennedy recovered a judgment against Nippes for $——.

On the 18th of October 1870, "Daniel S. Nippes, agent for Margaret Nippes," insured in the Mutual Insurance Company of Montgomery county, a dwelling-house, household furniture, springhouse, barn, stock, crops, &c., to the amount of $5050, of which $1650 were on the barn and contents.  On the 21st of November 1870, the barn and contents were destroyed by fire.

On the 22d of November 1870, Kennedy and Hartranft, and on the 30th of November, John J. Hughes issued attachment-executions on their judgments, the insurance company being made garnishees.  On the 4th of March 1871, a suit was commenced by Nippes and wife against the insurance company to recover the amount of the loss by the fire.  On the 1st of June 1871, the

[Nippes's Appeal.]

parties compromised the suit, the insurance company agreeing to pay $1850, "which included the whole policy on personal property and the loss on the barn of $950 by fire." On the 12th of July 1871, Ramsey issued an attachment-execution on his judgment given for the purchase-money, making the insurance company garnishees. On the 27th of September 1871, the insurance company "paid into court $1385, being the balance of money in hand of said company due on the policy of insurance."

The auditor further reported:—

* * * "Daniel S. Nippes and family since the purchase from Jesse W. Ramsey, have lived on these premises without change. Daniel S. Nippes and Margaret have been married over thirty-two years. The amount of the insurance paid by the insurance company was about equally awarded between the personal property and the barn destroyed by the fire.

"Margaret Nippes, the wife of Daniel S. Nippes, claims the whole fund for distribution, and also the attaching creditors of D. S. Nippes, the husband, ask to be paid out of the same money, their judgments; it is necessary to determine first, to whom the money in court belongs, and the solution of the question depends upon the fact whether the property insured belonged to Margaret Nippes or D. S. Nippes. The only facts submitted are those above stated; Mrs. Nippes claims first, because she exhibits a deed of conveyance for the premises upon which the insurance was, from Mr. Young. There is not a particle of evidence before your auditor to show that she ever paid a cent of the consideration mentioned in the deed, or that she ever had any money of her own at the time. The consideration mentioned is the same amount originally paid for the premises, a part of which was paid by the father of Daniel S. Nippes, and a judgment given by Daniel for the balance of the purchase-money which still remains a lien upon the premises, and upon which Daniel paid the interest to A. D. 1869. She having acquired title since her marriage cannot claim the property against her husband's creditors; and if she did not own the property she cannot claim that which is the proceeds of the insurance out of the same : Bergy's Appeal, 10 P. F. Smith 408.

"Secondly, Mrs. Nippes claims the fund upon the ground, that it was a voluntary settlement upon her, by her husband.

"At the time the deed was made, Daniel S. Nippes was indebted in $900 for part of the purchase-money; he never owned any other property, and by this deed conveyed everything he then owned to his wife through Mr. Young. What his personal property was worth does not appear, further than it is in proof that the insurance paid included all his personal property destroyed, and that amounted to about $900; whether he had any more at the time the deed was made does not appear, had it been more, or had he more estate, real or personal, than was conveyed to the wife

through Mr. Young, it was incumbent on her to have shown it. Under the facts of the case your auditor cannot find that the conveying all of his estate was a reasonable provision for his wife, and therefore the creditors of the husband, Daniel S. Nippes, must be paid out of this fund in the order of the serving of their writs upon the garnishee."

Mrs. Nippes filed the following exceptions:—

1. The auditor erred in deciding that the property insured by the Mutual Fire Insurance Company of Montgomery county, was the property of Daniel S. Nippes, and not the property of his wife, Margaret Nippes, and that the money paid into court by said insurance company should be paid and distributed to the attaching creditors of the said Daniel S. Nippes.

2. The auditor erred in not distributing to Margaret Nippes, the nine hundred and fifty dollars ascertained to be the amount of the loss upon the barn.

3. The auditor erred in not distributing to Margaret Nippes, the nine hundred dollars ascertained to be the amount of the loss upon the personal property.

The Court of Common Pleas (Ross, P. J.), in deciding on the exceptions, said:—

* * * "The claims of the attaching creditors and of Mrs. Nippes present two questions: 1st, Whether the property insured was the estate of Mrs. Nippes; and 2d, If not, whether if she had an insurable interest in it, though not the actual owner, she can take it in preference to the attaching creditors of her husband. It is manifest that if Mrs. Nippes be vested with the title of this property, it is by virtue of a voluntary settlement made by her husband. Not a dollar of her money was paid upon it. The property was acquired by her husband, partly by a gift of money from his father, and partly by securing the balance of the purchase-money by a judgment. It was his. He conveyed it to his wife by a conveyance through a third person, and to enable her to maintain it as a voluntary settlement, she must show that it was made under circumstances that will justify it in the light of fixed and wise rules of law. To determine the validity of a voluntary settlement made by a husband upon his wife, a series of inquiries may be applied as determining tests. 1. Was the husband solvent at the time he made it? 2. If solvent, was he indebted at the time? 3. Did the settlement denude the husband of all his property? There are other inquiries, but these embrace the facts of this case. Was D. S. Nippes solvent in 1853, when the settlement was made? Of this there is no evidence of a direct character—we are left to conjecture. But it is the duty of the wife, claiming under a voluntary settlement, to establish solvency on the part of the husband. She fails to show this affirmatively, and her case is weakened by her failure. All that the testimony discloses is, that

her husband owned this land valued at $1600, that the cash paid on it came as a gift from his father, and that he was in debt for it $900, which he had secured by a purchase-money judgment.   2. We thus reach the second inquiry, viz.: Was he indebted at the time?' This must be answered in the affirmative—for he was, and yet is indebted for the $900 judgment confessed to Mr. Ramsey for the purchase-money; but, being indebted, it devolves upon the wife the duty of establishing solvency of a sufficiency, which will rebut the presumption that then arises, that such settlement was erroneous and fraudulent: Woolston's Appeal, 1 P. F. Smith 416. It is true that a voluntary settlement is not void if there be any indebtedness to any amount whatever—for if any degree of indebtedness would defeat it, all voluntary settlements would be virtually fraudulent; since no person is at any time absolutely free from debt.   But the indebtedness of a solvent man, which will defeat a voluntary settlement, must be to such an amount as, in relation to his remaining assets, and the value of the settlement, is disproportioned to such assets.   This disproportion must be such as will tend to hinder, delay or defeat creditors, and leave the· maker of the settlement so bare of property that he cannot reasonably expect to meet his existing liabilities, or those which he must necessarily create, having regard to his business and social relations.   In relation to this inquiry, all that the record discloses is a debt of $900; and with the exception of a few tools, no other property save that which was made the subject of the settlement. This, then, was a voluntary settlement made upon Mrs. Nippes; and we now reach the third and last of the proposed testing inquiries.   3. Did the settlement denude him of all his property? Did it leave him without means to meet and discharge the debts, which having reference to his business and social relations he must necessarily create in the future?   If it did, then it was erroneous and void.   So far as the record shows, the husband had no other property, except a few personal goods, that he could have retained under the exemption laws against the whole world.   The policy of insurance shows that stock, crops, all the apparatus of the farm, were held by the wife.   But the law strongly condemns a settle-· ment that thus strips the husband of all his resources, as being against public policy.   This rule is to·be rigidly enforced, and courts must adhere to it, if honest creditors are to be protected and fraudulent debtors restrained.   In Ammon's Appeal, 13 P. F. Smith 285, it was held, that a voluntary settlement which denudes the husband of all or a greater part of his property is much more than a reasonable provision for the wife; for in considering what is, and what is not a reasonable provision, the circumstances of the husband are to be regarded—his probable necessities, as well as his debts: 2 Story's Eq. 2 v. § 1374.  ·The case disclosed by the record therefore stands thus,—first, an indebted husband; second,

a settlement that denudes him of all property that he is shown to have had at the time he made it; and the law arising upon these facts declares that such a settlement is void.

"But it is said that the time which has elapsed since the settlement was made, being nearly eighteen years, has revealed, until recently, the incurrence of no subsequent indebtedness—and, that under the ruling in Goff *v.* Nuttall, 8 Wright 78, this settlement should, from the lapse of time, be held to be good. How the lapse of time can make that valid which, when it was made, the law, arising upon the facts, declared void, I am unable to discern. Goff *v.* Nuttall differs from the case at bar in one very important particular. There the husband paid no part of the purchase-money—here he paid it all, or secured it to be paid. The cases differ widely, and the conclusion reached in the one is not applicable to, and cannot govern in the other.

"We agree therefore with the auditor in the conclusion that the settlement was void, and that the real estate was liable to the claims of the husband's creditors. Assuming this conclusion to be correct, the question still remains whether this fund, the fruits of the policy issued to Mrs. Nippes through her husband as her agent, should be distributed to her or to the attaching creditors of the husband. As I have endeavored to demonstrate, the wife has an insurable interest in the property of her husband. She may insure that interest, and as between him and herself she would be entitled to the fruits of the policy. But though she has this insurable interest, it is subject to the same vicissitudes which may affect her rights as wife in her husband's property. She has an inchoate right of dower in his realty, but that right may be divested by a sale of the husband's land, under a judgment or mortgage created by him. Her interest when insured is no more sacred than her interest as wife. If the one is destroyed by a sale under an encumbrance, the other must share the same fate. If it be resisted by creditors, who otherwise would remain unpaid, any other doctrine than this would enable a wife to acquire an interest by effecting an insurance upon her husband's property, which would override the rights of his creditors. It would be a fruitful and successful source of fraud. The husband would cease to insure in his own name, and obtaining policies upon the wife's interest, would in the event of a loss which diminished or entirely destroyed the value of the property, have a fund, obtained through that loss which was beyond the reach of creditors, when the interest insured, that is, of the wife in her inchoate dower, could be sold under execution. Such a theory cannot be tolerated by any system of jurisprudence. The law is, that as between husband and wife, the latter has an insurable interest in the property of the former. She may recover from the insurance company, as between herself and him, but the fruits of the policy are as amenable to the hus-

[Nippes's Appeal.]

band's creditors as the interest assured would have been if the husband's property had been sold at the suit of a creditor.

" This doctrine, founded on sacred principles, disposes of the ingenious and subtle argument based upon the existence of the wife's insurable interest. We admit she possesses it, but declare that, like her right of dower, it is subject to be taken by creditors of the husband.

"It follows from this reasoning, although this last point was not made before him, that the auditor was right in distributing the fund to the attaching creditors. The claims of Mr. Anderson were also properly allowed, and it is unnecessary to vindicate that part of the auditor's opinion.

" It may be remarked that as to $900 of this fund, that which arose from the loss of the personalty, there can be no question. It was beyond doubt the property of D. S. Nippes; and this portion of the funds, even if there should be error in our conclusions, must go to his creditors. But the reasons vindicating the conclusions of the auditor are so cogent that his entire report must be confirmed."

Mrs. Nippes appealed to the Supreme Court, and assigned for error the overruling the exceptions and confirming the report of the auditor.

*J. D. Bennett* and *G. R. Fox*, for appellants.—A voluntary conveyance is not fraudulent if the debts of the grantor are not so great as to leave their payment doubtful from the rest of his property : Wilson *v.* Howser, 2 Jones 109; Posten *v.* Posten, 4 Wharton 27 ; Chambers *v.* Spencer, 5 Watts 404. The insurance was by the husband as agent for the wife and for her benefit, and the money for the loss having been paid by the company, the husband's *creditors* cannot contest her interest : Insurance Co. *v.* Chase, 5 Wallace 509; Carpenter *v.* Ins. Co., 16 Peters 495. She as the wife had an insurable interest in the husband's property : Harris *v.* York Ins. Co., 14 Wright 349; Flanders on Insurance 24.

*G. W. Rogers, H. K. Weand* and *C. T. Miller*, for appellee, cited Bergey's Appeal, 10 P. F. Smith 408.

The opinion of the court was delivered, May 11th 1874, by

SHARSWOOD, J.—The learned judge below—starting with the assumption that Daniel S. Nippes, in August 1853, when he made the gift to, or voluntary settlement upon his wife, was indebted to Jesse W. Ramsey for the balance of the purchase-money, and that such an indebtedness invalidated the conveyance, if it was of all the husband's property, and more therefore than a reasonable provision for the wife—came logically to the conclusion that the gift or conveyance was void against the husband's creditors. But

[Nippes's Appeal.]

the debt to Ramsey clearly was not such a debt as would render the conveyance void as against subsequent creditors : Williams *v.* Davis, 19 P. F. Smith 21. It was secured by a judgment which was a lien on the settled land. The deed could not have been intended to hinder, delay and defraud that creditor, the vendor, for the wife took the land subject to the lien of the judgment given to secure its payment. There was then no prior debt upon the ground, of which the subsequent creditors could claim to come in. Unless there was an indebtedness at the time, or unless the evidence disclosed a purpose of defrauding subsequent creditors, carried out by actually incurring such debts, the fact that it was all the property the grantor had at the time is immaterial. That such was the motive of a conveyance may justly be inferred from a grantor's having entered into a new and hazardous business about the time when the conveyance was made, or from his having contracted large debts immediately thereafter : Mateer *v.* Hissim, 3 Penna. Rep. 160 ; Greenfield's Estate, 2 Harris 489 ; Snyder *v.* Christ, 3 Wright 499 ; Goff *v.* Nuttall, 8 Id. 81. The father of Daniel S. Nippes purchased for him and had conveyed to him the farm in question. He paid seven hundred dollars, and for the balance of the purchase-money Daniel S. Nippes confessed a judgment to the vendor. He then determined to settle this property on his wife, and accordingly it was conveyed to her in fee in the usual way through a third person. What was there to hinder him from doing this ? He owed no debt to any one which was not fully secured, and that upon the very farm in question. He was a farmer, and the evidence disclosed no intention of incurring debts from which he meant to cover up this property. If he had such an intention he certainly did not carry it out. Fourteen years elapse before any debt appears against him. During all this period Daniel S. Nippes and his wife lived on the farm, and derived their subsistence from it. We think it very clear that this conveyance or settlement was good against the husband's creditors, and she having insured her interest, and the improvements having been destroyed by fire, the insurance-money belonged to her.

But apart from all this, what did the fund in court represent ? Not the property insured, whether real or personal, but the insurable interest of Mrs. Nippes in that property. If she had no insurable interest the policy was void—but that was a question exclusively between her and the insurers. They paid the money into court at her suit. What title did her husband's creditors show to any part of it ? How was the insurance, admitting it to have been effected by the husband, with his own money, any fraud upon them unless to the extent of the premiums ? We have no evidence indeed that these premiums were paid with the husband's money, but the wife being the owner of the farm, residing upon and being entitled to its produce, the presumption is that the money with which the

[Nippes's Appeal.]

insurance was effected was her own. Had the property been destroyed by fire, without insurance, where would the creditors have been? It is plain the insurance made them no worse. Policies of insurance against fire are not deemed in their nature incidents to the property insured, but they are mere special agreements with the person insuring against such loss or damage as they may sustain, and not the loss or damage that any other person having an interest as grantee, mortgagee, creditor, or otherwise may sustain by reason of the subsequent destruction by fire: Carpenter *v.* The Providence Washington Insurance Company, 16 Peters 495. If creditors have a lien by mortgage, judgment or execution, they can insure their own interest, but they can have no right to attach insurance-money due to any one but their own debtor.

> Decree reversed at the costs of the appellees, and record remitted that the fund in court may be paid or distributed, according to the principles of this opinion.