## LEWIS v. JULIUS et al.

### (District Court, S. D. New York. December, 1913.)

**1. COURTS (§ 99*)—LAW OF CASE.**

Where a discharge is denied to bankrupts on the ground that they have made a conveyance of their property with intent to defraud creditors, such determination will be regarded as the law of the case in an equity suit by their trustee to set aside such conveyance.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 340; Dec. Dig. § 99.*]

**2. BANKRUPTCY (§ 279*)—FRAUDULENT CONVEYANCES—VACATION—DISCHARGE.**

Since Bankr. Act July 1, 1898, c. 541, § 67e, 30 Stat. 564 (U. S. Comp. St. 1901, p. 3449), only pronounces conveyances by bankrupts in fraud of creditors null and void when not made to purchasers in good faith and for a present consideration, it is possible that bankrupts may be denied a discharge under section 14, because of their having conveyed property in fraud of creditors, and yet that the property so conveyed cannot be recovered by the trustee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 419–424; Dec. Dig. § 279.*]

**3. BANKRUPTCY (§ 180*)—FRAUDULENT CONVEYANCES—ACTION BY TRUSTEE—GOOD FAITH.**

In a suit by a bankrupt's trustee to recover property alleged to have been conveyed by the bankrupt in fraud of creditors, the good faith of the transaction is to be measured by the same standard of care that is applied to a creditor in accepting payments or transfers as payments from an insolvent debtor.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 252, 253; Dec. Dig. § 180.*]

**4. BANKRUPTCY (§ 182*)—FRAUDULENT CONVEYANCE—GOOD FAITH—EVIDENCE.**

Transactions known by a purchaser from a bankrupt to be out of the usual and ordinary course of business tend to negative good faith in determining whether they are void as in fraud of creditors.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 255–258; Dec. Dig. § 182.*]

**5. BANKRUPTCY (§ 182*)—CONVEYANCES—FRAUD—RECOVERY BY TRUSTEE.**

Where the members of a partnership, with knowledge of their insolvent condition, transferred all their assets to a corporation organized for the purpose, to which certain of their personal friends and relatives contributed money to make a settlement with the bankrupts' creditors, the transfer, not being made for a present fair consideration, was in fraud

of creditors and voidable by the trustee in bankruptcy of the firm who was entitled to recover the property as against the trustee in bankruptcy of the corporation.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 255–258; Dec. Dig. § 182.*]

6. BANKRUPTCY (§ 279*)—TRUSTEE—ASSETS—PROCEEDS OF INSURANCE.

Where members of a bankrupt firm transferred their assets to a corporation organized to take over the same, in fraud of creditors, and the corporation immediately insured the property, it had title and an insurable interest therein, and hence neither the insurance nor the proceeds thereof after loss were recoverable by the trustee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 419–424; Dec. Dig. § 279.*]

Action by Augustus Lewis, as trustee in bankruptcy of the firm of Julius Bros., against George Julius and others, to set aside a fraudulent transfer, and to recover the proceeds of a fire policy on goods alleged to belong to the bankrupts. Judgment for plaintiff, for a part of the relief demanded.

In May, 1910, George and Simon Julius, trading as Julius Bros., were insolvent and knew it. They communicated their misfortune to some of their creditors and were advised to lay their trouble before a member of the bar, who was the attorney for the recommending creditor. This was done, and a creditors' meeting called. At the meeting a committee was appointed, and subsequently the Julius partners made an offer of 25 per cent. with a possible additional sum if certain insurance turned out of any value. All the creditors accepted this proposition except the firm of Frank & Sons and one Pressman.

The manager of the Frank firm was and is one Herzog, the brother of the attorney for the plaintiff in this case. Mr. Herzog always refused to compromise the claim of his firm against the Juliuses. He was advised so to do by his brother; no reasons for such action appear; but he was entirely within his rights in this decision.

Pressman had credit insurance, and was afraid of vitiating his insurance if he took any positive steps regarding Julius. He seems to have done nothing but leave the matter to his insurers, who took a judgment in his name and apparently refused to compromise.

The Juliuses did not have enough money to pay the 25 per cent. settlement. They or their attorney were necessarily aware that, with debts of about $6,000 and two creditors with claims (aggregating about $1,000) refusing to settle, bankruptcy was imminent. I find that, in consequence of this recognized condition, the following plan was devised and carried through: Certain friends of the Juliuses contributed about $1,500, depositing that sum with the bankrupt's attorney, Mr. Sundheimer. This was done on or about May 24, 1910. On June 7th the corporation of Julius Bros. Company had been formed and all the property of Julius Bros. was conveyed to the new corporation. The expenses of formation were paid out of the fund in Mr. Sundheimer's hands, and he also paid directly 25 per cent. to the assenting creditors. The aggregate of these payments, plus a fee of $200 to Mr. Sundheimer, substantially exhausted the fund. Julius Bros. Company thereupon continued the business of Julius Bros., collecting the accounts, using the goods, and utilizing as the foundation of its business certain machinery, furniture, and fixtures particularly set forth in the bill of sale from firm to corporation. After the corporation was formed and in business, one or both of the Juliuses had interviews with Herzog and Pressman (the nonassenting creditors). There was also talk between Mr. Herzog, the attorney, and Mr. Sundheimer. The one contested point in this case is what was said at these interviews.

I find that the Juliuses were willing to pay 25 per cent. after the formation of the corporation, but that they always coupled any expression of such

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

willingness with a threat that, if the creditors did not take 25 per cent., he would never get anything.

Frank & Sons and Pressman obtained judgment and issued execution in vain, and then, in or about September, 1910, filed a petition in bankruptcy against Julius Bros. The third petitioning creditor was Mr. Herzog, the attorney, for the costs included in the judgment of his brother's firm. In this bankruptcy proceeding George and Simon Julius individually and as a copartnership were duly adjudicated, and the plaintiff herein duly elected trustee.

The schedules reveal no other creditors but the petitioners. This was the result of Mr. Sundheimer's advice; he holding that the acceptance of 25 per cent. by all the creditors had extinguished their debts before bankruptcy. This view of the law has not been acceptable to all creditors, and some other claims have been filed, but it is not clear whether any steps have been taken to expunge them. The pendency of this bankruptcy proceeding against Julius Bros. did not prevent Julius Bros. Company from going on in business. They bought, manufactured, and sold, but with no capital except the proceeds of the accounts and goods obtained from Julius Bros.

All of the money contributed by friends and relatives had been used to pay 25 per cent. of old debts; none of it had in form gone into the coffers of the corporation; it had been received and disbursed by the attorney; but those who contributed the money received stock in Julius Bros. for it.

There is no evidence to show that George and Simon Julius, or either of them, ever agreed to repay the money so contributed or to secure otherwise than by the issuance of the stock of Julius Bros. Company.

In July, 1911, there was a fire on the premises of Julius Bros. Company. A considerable amount of goods was destroyed, and the machinery, furniture, and fixtures above referred to were somewhat injured. This machinery had been kept in repair by Julius Bros. Company, a small portion of it had been sold and replaced, but upon the whole it continued to be the same equipment which had been the undoubted property of the firm of Julius Bros. While the insurance questions arising out of this fire were still unsettled, this action was begun.

The original theory of suit was (and still is) that everything that Julius Bros. Company had was either directly or by a species of descent the property of Julius Bros.; that is, that Julius Bros. Company had nothing except the identical articles by it received from Julius Bros. or goods, accounts, and money which represented similar articles or property so obtained. From this it followed that all the insurance on goods destroyed or injured was likewise in equity the property of Julius Bros., and therefore of their trustee.

The prime object of suit being to obtain the insurance moneys, a temporary injunction was sought and first obtained in the bankruptcy proceedings. This brought to the front the defendants Alexander Levy and Harry Julius, copartners trading as Levy & Julius. The Julius is a brother of the original bankrupts. He has claimed (at this trial and always) that his firm had loaned $2,000 to Julius Bros. Company to relieve the pressing necessities of that corporation occasioned by delay in collecting the insurance moneys aforesaid. That in order to secure his $2,000 he had received an assignment of all the insurance moneys. Said insurance moneys amounted to $3,350; i. e., $3,000 for loss on goods, and $350 for injuries to fixtures, machinery, and furniture.

Undoubtedly the relations between Levy & Julius and Julius Bros. Company were intimate and friendly, for, although Levy & Julius had an assignment of all the insurance moneys, so much thereof as was not necessary to secure the aforesaid loan of $2,000 was paid direct to Julius Bros. Company. The balance was withheld by the insuring companies owing to the pendency of this action. Thereupon on general consent, or without serious opposition, the insurance fund was brought into this court; Levy & Julius were made parties to the suit; the insurance companies were discharged, and Levy & Julius ultimately permitted to withdraw the moneys on bond. In the meantime, and during the pendency of this action, Julius Bros. Company was petitioned into bankruptcy and duly adjudicated in February, 1913. Pressman became the trustee of that company, and it appears that he has received and sold the very machinery traced (as above set forth) from Julius Bros. He has been made a party defendant.

The foregoing are believed to be all the material facts, and it seems necessary to add by way of comment, or further finding only the following: The machinery, furniture, and fixtures described in the bill of sale from firm to corporation have been successfully traced into the hands of the defendant Pressman, trustee. Three hundred and fifty dollars paid by insurance companies for injury to said machinery, etc., has been traced into the hands of the defendants Levy & Julius, as copartners.

The defendant Harry Julius, as an original contributor to what may be called Mr. Sundheimer's fund, as an original shareholder in Julius Bros. Company and as a relative intimately acquainted with the necessities of George and Simon Julius, had every reason to believe that all the machinery, furniture, etc., of Julius Bros. Company had been the machinery, etc., of Julius Bros., and that all the goods, accounts receivable, and money of Julius Bros. Company represented the proceeds, collections, sales, and reinvestments of similar properties of Julius Bros. There is, however, no evidence to show that Harry Julius did actually form an opinion on these subjects, but, if he is a reasonable man and had thought about it, he knew the facts from which the result just indicated would inevitably follow.

No portion of the goods of Julius Bros. has been found in specie, nor do any of the accounts originally assigned from firm to corporation any longer exist.

Harry L. Herzog, of New York City, for complainant.
Malcolm Sundheimer, of New York City, for Levy and Julius.

HOUGH, District Judge (after stating the facts as above). [1] That what was done by Julius Bros. amounted to a conveyance with intent to hinder, delay, or defraud their creditors or some of them has been decided in this court on the discharge proceedings. This equity case grows out of the bankruptcy, and it would be entirely improper for me not to recognize the decision on discharge as the law of this case, nor am I inclined so to do.

[2] Under section 14 of the Bankruptcy Act (relating to discharge), it is, however, possible that a discharge may be denied, yet that which was conveyed in fraud cannot be recovered. This because section 67e only pronounces such conveyances "null and void" when not made to "purchasers in good faith and for a present fair consideration." In my judgment the conveyance of Julius Bros. "property to the corporation of Julius Bros. Company was plainly not made for a present fair consideration."

[3, 4] The good faith of the transaction is to be measured by the same standard of care that must be applied to a creditor in accepting payments or transfers as payments from an insolvent debtor. Transactions known by the purchaser to be out of the usual and ordinary course of business tend to negative good faith. Remington on Bankruptcy, vol. 1, § 1496, and cases cited.

[5] The conveyance, therefore, is not within the saving clause of section 67e. Complainant is entitled to a decree as prayed for to the effect that the bill of sale made on June 7, 1910, be declared null and void. He is also entitled to a decree that the property transferred or the proceeds thereof be paid over to him if in the possession or under the control of any of the defendants in this cause. The limits of this doctrine are, I think, properly set forth in Standard National Bank v. Garfield National Bank, 70 App. Div. 46, 75 N. Y. Supp. 28, and cases cited. Therefore complainant may further take decree awarding to him everything in the possession of Pressman, as trustee

in bankruptcy, for it is plain that Pressman has nothing that did not come out of the fraudulent conveyance.

[6] At the trial I was disposed to think that the rights of creditors of Julius Bros. Company should be considered, but this suit was begun before the corporation became bankrupt; the trustee of Julius Bros. has all the rights of a creditor, armed with execution unsatisfied, and the institution of a suit in equity is notice to all the world. Therefore the present complainant is entirely within the rule laid down by the case last cited. I am not, however, able to see that complainant is entitled to recover any of the insurance moneys on policies issued to Julius Bros. & Co. Let it be conceded that that corporation was a fraudulent grantee. Nevertheless it had title, and, having title, it had an insurable interest in the goods of or in the possession of the corporation. When it insured those goods, a personal contract was made between the corporation and the insurers; neither the insurance nor the proceeds thereof can be called proceeds of conveyed or transferred goods. At the hearing I was inclined to look upon insurance as proceeds of the goods insured, but the decisions since brought to my attention are wholly the other way. They are all cited in Forrester v. Gill, 11 Colo. App. 410, 53 Pac. 230, and the best discussion of the matter is under the great name of Chief Justice Sharswood of Pennsylvania, in Nippes' Appeal, 75 Pa. 472. Nor is there (after all) anything novel in this doctrine; it is entirely in line with the rule that a shipowner, when claiming limitation of liability under the act of 1851, is not bound to bring into the limitation proceedings the insurance on his vessel. The reasoning by which this result has long been reached is the same as that of Sharswood, C. J., in the case last cited.

It results that complainant may take a decree against Pressman as trustee, and also against the bankrupts for any difference between what Pressman has and the asserted value of that which was conveyed, to wit, $1,550; but he cannot recover against any one, nor more particularly from Levy and Julius, the proceeds of the insurance moneys. There will be no costs.