## Snyder *versus* Christ.

*Conveyance in Anticipation of Indebtedness, when valid.—Sheriff's Sale of Life Estate, when void.*

1. A., owning land, conveyed it by deed to B., in trust for the use of himself and wife during their joint lives and the life of the survivor, with remainder to their children. C. afterwards sold a mule to A., taking therefor the judgment-note of himself and wife, upon which execution issued, and fifty acres of the land were levied and sold to C., who brought ejectment, claiming that the trust-deed was void, because made to hinder, delay, and defraud creditors, and in anticipation of future indebtedness, proving that A. had several small debts at the date of the conveyance; that immediately after, he borrowed $200 to pay them, and had expressed apprehensions that other claims might be brought against him. *Held*, that though a fraudulent motive for the conveyance could fairly be inferred from the grantor's having entered into a new and hazardous business, or from his having contracted large debts immediately thereafter, yet a mere expectation of future indebtedness, or an intent to contract debts, not coupled with a purpose to convey the property to keep it from the reach of creditors, was not within the letter or spirit of the statute 13 Eliz., and would not avoid the conveyance as against subsequent creditors. That if C. knew of the trust-deed at the time he sold the mule, of which the taking the judgment-note of A. and his wife therefor was evidence, the conveyance did not hinder, delay, nor defraud him, and was therefore good as against him; and that the jury should thus have been instructed by the court.

2. The sheriff's sale on *vend. ex.* of the land, did not vest in C., A.'s life estate: for there was no adverse possession in hostility to it; no sufficient evidence that the debtor claimed to hold in fee; nor could C. have had reasonable ground to believe that the fee was in A., since he had record notice of the deed in trust; therefore the sale of the life estate, without the order of the court on ten days' notice to the tenant for life, as directed by the Act of 24th February 1849, was void, and conferred no title upon the purchaser.

3. Where the levy and sale were made with knowledge of the trust-deed, the levy being made on the land as the property of the wife as well as that of the husband, it was a question of fact for the jury, whether or not the plaintiff intended to assert the trust-deed. If he did, it was not conclusive upon him; and it was error for the court to declare, as a conclusion of law, that the plaintiff's title was founded on the trust-deed alone, and that he was estopped from denying the validity of that deed, or asserting that he bought any other title than the one conferred by it.

ERROR to the Common Pleas of *Franklin county*.

This was an action of ejectment, brought March 8th 1858, by William Christ against Elizabeth Snyder and John Snyder, for fifty acres of land in Montgomery township, Franklin county.

John Snyder was the owner of a tract of land containing about 100 acres, which, on the 24th of February 1855, he conveyed to John Reyer, upon the following trusts:

"In trust, however, for the use and benefit of the said John Snyder and Elizabeth his wife, for and during their joint lives, and the life of the survivor of them; and after the death of both of them, then for the use and benefit of Mary and Catharine, two children of the said Elizabeth, and for the use and benefit of such

[Snyder *v.* Christ.]

children as the said John and Elizabeth may have. The said two children of Elizabeth, and such children as said John and Elizabeth may have, to have and take equal shares of said tract of land, to them, their heirs and assigns for ever."

This deed was acknowledged on the 26th day of February 1855, and recorded on the 10th day of March of the same year. Snyder was indebted to divers persons, to the amount of about $200, at the date of the deed. On the 17th of March 1855, he borrowed $200 from Henry Sites, to pay off these small debts, and he did pay them all off except one of $12, and a due-bill of $25. In May 1855, Snyder gave Sites a judgment-note for the borrowed money, dating it back to the date of the loan. At the time Snyder made the trust-deed, his personal property was worth $150. On the 1st day of March 1855, he bought a mule from William Christ for $140, who took a judgment-note from the defendant and his wife, with interest from the 8th day of March 1855, and which was entered of record in the prothonotary's office on the 23d day of the same month. On the 17th of March 1855, Elizabeth Snyder, the wife, in consideration of $324, entered into a written agreement with Jacob Gerholt for the sale of 40 acres and 104 perches of the 100 acres of land conveyed by the trust-deed. The husband assented to the agreement in writing, below the body of the contract, and, on the 23d of June 1855, joined with his wife in a deed, with special warranty to Gerholt, purporting to convey a fee in the land. On the 13th of March 1855, Snyder and wife sold 1 acre and 124 perches of the same land to John Hornbraker, and made a fee simple deed to him, with general warranty. This deed was made in pursuance of a contract for the land made with Hornbraker in the fall of 1854, before the trust-deed was executed. Christ procured a *fi. fa.* to be issued upon his judgment, and by virtue thereof the sheriff levied upon and sold to the plaintiff, upon *venditioni exponas*, all the interest of John Snyder and Elizabeth Snyder in the fifty acres of land in dispute. The sheriff's deed was duly acknowledged and delivered to the plaintiff on the 23d day of January 1858, for the consideration of $188. The defendants' counsel notified the plaintiff, before he bought, that they claimed a life estate *only* under the trust-deed. The *venditioni exponas* was issued without the requisite application to the court, and without notice to the defendant. At the time the plaintiff sold the mule to the defendant, he knew of the execution of the trust-deed, took his judgment-note against both the husband and wife, levied upon, sold, and accepted a conveyance of the estates of both of them. The plaintiff claimed to recover upon his sheriff's deed. Snyder and wife defended on the ground that they took life estates in the land, under the trust-deed; and that inasmuch as the plaintiff did not comply with the requirements of the Act

[Snyder v. Christ.]

of 24th of January 1849, in making sale of the life estate, his purchase and deed conveyed no title to him. The plaintiff, in order to break the force of this objection, assailed the validity of the trust-deed on two grounds: 1st. That it was made to hinder, delay, and defraud creditors. 2d. That it was made in contemplation of future indebtedness. 3d. That even if the trust-deed was valid, he had a right to sell the life estate of Snyder upon a *venditioni exponas*, without complying with the provisions of the Act of the 24th of January 1849, because, first, Snyder disclaimed title under the trust-deed, and secondly, because the plaintiff had reasonable grounds for believing that he owned the fee.

The defendants requested the court to charge the jury—

1. Actual fraud is not to be presumed—it must be clearly proved; and there is not sufficient evidence before the jury that the "trust-deed," dated the 24th of February 1855, was made by the parties with the intent to cheat or defraud the creditors of Snyder.

2. The indebtedness of $12 or $14 testified to, and the $25 owing to Jacob Krider (there being no proof of other indebtedness), was not such an indebtedness as would make the trust-deed a legal fraud, it having been proved that Snyder had personal property worth $150.

3. The trust-deed conveyed a life estate *only* to Snyder and wife, with a remainder to their children.

4. The judgment of Christ against Snyder and wife was invalid and void as to the wife, and a sale thereon by the sheriff did not divest the wife's title to the land.

5. If Snyder's interest in this land was a life estate only, the sale did not divest his title, unless the *venditioni exponas* on which it was sold was issued by the order of the Court of Common Pleas of Franklin county, on ten days' previous notice of the application for such writ to the said Snyder.

6. The conveyance by Snyder and wife to Gerholt of part of the land embraced in the trust-deed, should not be regarded as a disclaimer of the life estate, and as an assertion of title hostile to that conveyed by the trust-deed, because they put the trust-deed on record, and the written contract for the sale of the land was between Gerholt and Mrs. Snyder, assented to by the husband, recognising thereby the trust-deed as being the basis of the title which the wife was contracting to sell.

7. The plaintiff's title is based upon the trust-deed, because he levied upon, sold, and bought the interest of Snyder and wife in the land, as conveyed by said deed, there being no evidence of other title in the land in Mrs. Snyder, except under the trust-deed. He is therefore estopped from denying the validity of the

[Snyder *v.* Christ.]

trust-deed, or asserting that he bought any other title than the one conveyed by said deed.

8. Even if the sale did divest the title of Snyder, there can be no recovery in this case, because Snyder and wife held by moieties and not by entireties.

The court affirmed the 1st, 2d, 3d, and 4th points, negatived the 7th and 8th, submitted the question of fact in the 6th point to the jury, and answered the 5th point in the general charge as follows :—

" The jury will remember that the plaintiff's title rests on the sheriff's sale, and if there was no such fraudulent purpose as is alleged, then the defendants had only a life estate in the land, and the true method of proceeding on the part of Christ was by sequestration, instead of levy and sale. But there are certain exceptions to this rule. ' Where the debtor disclaims the life estate, and claims a fee, or where the creditor had reasonable grounds to believe that the debtor owns the fee,' the creditor may proceed by levy and sale. Do the facts in this case make out either of these positions ? If they do, then the plaintiff on this point must recover. Besides the frequent declarations of Snyder that the land was his own, Snyder and wife executed a deed on the 13th of March 1855, for 1 acre and 124 perches of the land to Hornbraker. This is said to have been done in consummation of an agreement made in the fall of 1854. $17 of the purchase-money was paid. Mrs. Snyder made an agreement, with her husband's consent, for the sale of 40 acres and 104 perches of the land to Gerholt on the 17th of March 1855, which was followed by a deed on the 23d of June 1855. $150 of the $300 of the purchase-money were paid. It is argued that this was an assertion of title in the most solemn form, and a disclaimer of the life estate. The jury will say whether these declarations and acts of Snyder afforded reasonable grounds of belief that Snyder owned the fee. If so, the plaintiff on this point must have your verdict."

There was a verdict and judgment for plaintiff, whereupon the defendants sued out this writ, and assigned as cause for reversal that the court erred in negativing the 7th and 8th points submitted, in not answering the 6th point as requested, in answering the 5th point as above stated, and instructing the jury in the general charge as follows :—

"Was this deed made with a view to future indebtedness ? If the views taken by the plaintiff's counsel be correct, the defendant, Snyder, at the execution of the deed of trust, had not sufficient property to pay his debts, exclusive of the land conveyed. It is also in evidence that he expressed his intention of executing a conveyance to his wife, to prevent the German lady from collecting her claim, and the argument is, that this design

[Snyder v. Christ.]

of defrauding one claimant expanded in his mind until it extended to creditors thereafter to be made, and that this deed was the offspring of that design; and that in accordance with this purpose, being hard pressed by his creditors in the fall of 1854, he commenced negotiations with Sites for the loan of $200, and whilst they were *pending* he executed the deed, and so arranged that the judgment bill for the money, was given on the 17th of March 1855, thus changing a number of *prior* into *subsequent* creditors—Snyder agreeing, if the evidence is believed, that the judgment bill should be a lien on the land, although he had previously made a deed therefor to a trustee. The deed was acknowledged on the 26th of February 1855; on the 1st of March thereafter, and ten days before it was recorded, the mule debt was made, and thus debts were created to the amount of $340 about the time the deed was acknowledged, but the judgment bill and note followed.

"It is further argued that this was all done as part of the scheme alleged, because Snyder was the first to deny the validity of the deed of trust, by making sale of the trust property to Hornbraker and Gerholt, to whom deeds were made by himself and wife for a large portion of the land, receiving a large portion of the purchase-money. The creditors could not be allowed, according to Snyder's views, to sell the land, because it was a trust estate, but Snyder and wife could do so with impunity.

"The counsel on the other side argue that the borrowing of the money from Sites indicated an honest purpose—that Snyder desired to get rid of the importunities of many creditors, and have all his debts owing to one man; and that the declarations of Snyder, as to his purpose with respect to the German woman, does not establish a similar purpose with other creditors; and they say also that the creditors had notice of the deed, because it was duly recorded.

"It will be for the jury to weigh the facts and determine the question. If John Snyder made the trust-deed with the intent thereafter to create indebtedness, then the deed was fraudulent and void."

*Reilly & Sharpe*, with whom was *Nill & Kennedy*, for plaintiffs in error, argued, that a voluntary conveyance, even if made in anticipation of future indebtedness, is not therefore invalid under the statute of 13 Elizabeth, where the creditors have either actual or constructive knowledge of such conveyance at the time the debt is contracted; citing the statute of Eliz.; Chambers v. Spencer, 5 Watts 409; Mateer v. Hissim, 3 Penna. Rep. 160; Greenfield's Estate, 2 Harris 502; Sexton v. Wheaton, 8 Wheat. 229; Shaw v. Standish, 2 Vern. 326; Townsend v. Windham, 2 Ves. 1; Lush v. Wilkinson, 5 Id. 384; Battersbee v. Farrington,

1 Swanst. 106; Byrod's Appeal, 7 Casey 241; Lancaster *v.* Dolan, 1 Rawle 231; York County Bank *v.* Carter, 2 Wright 446; as controlling and overruling the principle laid down in Thompson *v.* Dougherty, 12 S. & R. 448; and insisted that the court should have instructed the jury that if the plaintiff knew of the deed when the judgment was taken by him, and had ratified it by taking his judgment against both, he cannot now invalidate it. The court also erred in the manner in which the questions of fact, in regard to the fraudulent intent of Snyder, were submitted to the jury—that there were facts submitted of which there was no evidence, and testimony commented on without noticing all the facts connected with it.

They further argued that if the trust deed was valid, the sale on the *fi. fa.* and *venditioni exponas* did not divest the title which defendants held under it, and that the ruling of the court below, which was based on Gordon *v.* Inghram, 8 Casey 214, was erroneous, that decision being prior to the passage of the explanatory Act of January 24th 1849, which now controls such sales: Commonwealth *v.* Allen, 6 Casey 52; Kintz *v.* Long, 6 Id. 501.

Snyder did not disclaim his life estate under the deed by selling part of it in fee to Hornbraker and Gerolt, or by trying to rent it, for he put the trust deed on record. This contract for the sale was made by his wife; the deeds under it recited the trust-deed, and he had a right to rent it away for the term of his life. The sale in fee was under a mistake as to the title vested in them. The plaintiff had notice of the interest of defendants by the record of the trust deed, and from Snyder's counsel at the sheriff's sale.

The court were wrong in negativing defendant's seventh point; Christ, having purchased the defendant's title under the trust deed, must stand or fall by it: Eyrick *v.* Hetrick, 1 Harris 488; McLaughlin *v.* Shields, 2 Jones 283, and the cases in 7 Watts 51; 9 Id. 482; 1 Wharton 278; 4 Barr 177; 2 Id. 313.

The eighth point should have been affirmed. Since the Act of April 11th 1848, an estate conveyed to husband and wife cannot be levied upon and sold for the husband's debts, and the estate of the wife therein be so far divested as to allow the sheriff's vendee to recover in ejectment: Ritter *v.* Ritter, 7 Casey 389; Act of April 22d 1850; Hoar *v.* Axe, 10 Harris 384; McElfatrick *v.* Hicks, 9 Id. 402; even before the Act of 1848, where man and woman took by moieties before marriage, they held by moieties afterwards: 2 Cruise Dig. 494; Plowden & Quin 180, 193; Plowden's Rep. 483.

*G. W. Brewer*, for defendant in error, contended that the deed of trust was made, 1. To defraud, hinder, and delay creditors; and 2. In anticipation of future indebtedness, and therefore

[Snyder v. Christ.]

void; and that these questions were properly submitted to the jury. The deed was voluntary, and the plaintiff below had no notice of it when he gave the credit for which the judgment was taken. It was not recorded until ten days after the judgment was taken. The addition of her signature could neither increase nor diminish the defendant's interest in the law or make a fraudulent deed available against the recovery of an honest debt. Upon the question of fraud and future indebtedness, he cited 2 Harris 502; 5 Watts 409; 3 Barr 166; 1 Rawle 352; 2 Barr 91; 6 Watts 248; 3 Casey 124, 148; 4 Harris 496; 7 Id. 252; 10 Id. 183; 1 Id. 306; 6 Watts 249. Even if the jury had found for defendants on the question of fraud, the plaintiff was entitled to their verdict if they believed there was an adverse possession in hostility to the deed of trust, or that defendant claimed to hold in fee, or that plaintiff had reasonable ground to believe so: 8 Casey 215.

The sheriff sale was not the date which fixed the position of the parties, but the time when the debt was contracted. Notice at the sale that defendant only claimed a life estate, was too late. When the debt was contracted he claimed the land, sold portions of it in fee, and made warranty-deeds. Gordon v. Inghram, was decided after the Act of 1849. When the defendant in error entered up his judgment he knew that any proceeding on it would be void as to the interests of Mrs. Snyder, and from that day proceeded only against John Snyder.

The opinion of the court was delivered, June 5th 1861, by

STRONG, J.—The material facts of the case, as exhibited by the record, are the following:—John Snyder, being the owner of a tract of land, containing one hundred acres, on the 24th day of February 1855, conveyed it by deed to John Reyer, "in trust for the use and benefit of the said John Snyder and Elizabeth his wife, for and during their joint lives, and the life of the survivor of them," with remainder to the use of two children of the said Elizabeth, and to such children as the grantors might have. The deed was acknowledged on the 26th of February, and recorded on the 10th of March 1855. It recited that it was made in consideration of one dollar, and natural love and affection, and in fulfilment of an ante-nuptial contract with the grantor's wife.

On the 1st of March 1855, William Christ, the plaintiff below, sold a mule to John Snyder for $140, and took from him and his wife a judgment-note for the price. Upon this note judgment was entered on the 23d of the same month. To October Term 1857, an execution was issued thereupon. Fifty acres of the land, conveyed to John Reyer, were seized as the property of John and Elizabeth Snyder, and sold as their property to the plaintiff,

[Snyder *v.* Christ.]

under a *vend. ex.* to January Term 1855. For these fifty acres, and claiming under this sheriff's sale, the plaintiff has brought this ejectment. It is not denied that the judgment and sheriff's sale were utterly void as against Mrs. Snyder, and that they disturbed no interest which she may have had in the land. The plaintiff's claim to recover, therefore, rested entirely upon his rights as against John Snyder, the husband. If the deed to Royer was valid, then John Snyder had but a life estate in the land when the judgment was recovered, or in a moiety of it, and no more was subject to be taken in execution for his debts.

The position of the plaintiff, however, was that the deed was made to hinder, delay, and defraud the creditors of John Snyder, and that it was made in anticipation of future indebtedness. He contended, therefore, that it was a nullity, and that he was entitled to recover the land as if the conveyance had never been made. To maintain this position, he introduced evidence to show that at the date of the deed Snyder was indebted in several small sums, amounting in the aggregate to about $200; that his personal property did not exceed $150; that he had expressed apprehensions of a claim from a German woman, to whom he seems to have promised marriage; and that, within a few days after the deed was made, he borrowed $200 to pay his small debts, as he said, and purchased the mule, for which the plaintiff, took his note and that of his wife. It was in reference to this state of facts that the jury were instructed that the plaintiff being a subsequent creditor, could only avail himself of frauds practised against himself. But that if the deed was made with the design thereafter to create debts, it was such a fraud as to the plaintiff as would entitle him to a verdict. It is not easy to define precisely when a voluntary conveyance is invalid as against a subsequent creditor of the grantor. It was said by Duncan, J., in Thompson *v.* Dougherty, 12 S. & R. 456, that "if a party make a settlement with a view to future debts, and these debts are connected with the deed of settlement, and with the view to keep the estate in his family, to fence out the debts so contracted, and secure the estate to his family," it is a badge of fraud, and will render the deed inoperative as to such creditors. Even this declaration lacks perspicuity. What did the judge mean by the "debts being connected with the deed of settlement?" If the purpose of a grantor in a voluntary conveyance be to withdraw the property from the reach of debts which he intends to contract; if such be his motive for the conveyance, no doubt it is invalid as against the debts subsequently incurred. That such was the motive of a conveyance, may fairly be inferred from a grantor's having entered into a new and hazardous business about the time when the conveyance was made, or from his having contracted large debts immediately thereafter. It is not quite so

[Snyder v. Christ.]

clear that a mere expectation of future indebtedness, or even an intent to contract debts, if it be only an intent, not coupled with a purpose to convey the property, in order to keep it from being reached by the creditors, will make the deed invalid as against such future creditors. Certainly such a conveyance is not within the letter of the statute 13 Eliz., nor does it seem to be within its spirit, which was to relieve against intended frauds. We do not think that the learned judge of the Common Pleas intended so to charge the jury, or that his language justly bears such a construction. It was not so faulty in the abstract, as in its application to the facts of this case. It should not have been overlooked that there was evidence of knowledge by Christ, the plaintiff, at the time he sold the mule to John Snyder, that Snyder had conveyed the property in trust for his wife. At least the jury might have inferred so much from what was in proof. It was difficult to account for the fact that the plaintiff took for the price of the mule not only the note of Snyder but that of his wife, on any other supposition than that the plaintiff knew that Mrs. Snyder had an interest in the land. And if he knew of the conveyance when he extended credit to Snyder, how can he be said to have been defrauded by it? If he had been a purchaser of the land from Snyder, with knowledge of the previous voluntary conveyance, it cannot be doubted that it would have been good against him. His situation was no better as a creditor, if he had knowledge of the conveyance. The language of the court, therefore, was too broad to be applied to this case. It should have been left to the jury to find whether Christ knew, when he sold the mule, that the property had been conveyed in trust in part for Mrs. Snyder. If he did know it, then it was not for him to avoid the conveyance. This is all that we need to say respecting the first assignment of error.

The plaintiff, however, contended that even if the trust-deed was valid under the sheriff's sale to him, he had become the owner of Snyder's life estate, and in that character was entitled to recover. Before the Act of Assembly of the 24th of January 1849, life estates in lands, yielding rents, issues, and profits, could not be sold under any execution. A sheriff's sale, under a *venditioni exponas*, conferred no title upon the purchaser. Since that act, however, such estates may be sold under the direction of the proper court, and on the application of a lien-creditor, with ten days' notice of the application to the tenant for life (6 Casey 52, and 6 Id. 501), and in no other way. This is at least the general rule. But in the present case the *venditioni exponas* issued without any direction of the proper court, without any application of a lien-creditor, and without any notice to John Snyder. Apparently, therefore, no title to the life estate passed by the sheriff's sale. It was ruled, it is true,

in Gordon *v.* Inghram, 8 Casey 214, in 1854, that the sequestration of a life estate is unnecessary when there is an adverse possession in hostility to it, or when the debtor claims to hold in fee, or where the creditor has reasonable ground to believe that the debtor owns the fee; and that in all such cases the debtor's interest in the land may be sold on execution.   Neither of the exceptions existed in the present case.   There was no adverse holding to the tenancy for life.   The possession of John Snyder was in entire consistency with his being a tenant for life, and the creditor and purchaser were informed constructively, before the levy, by the deed on record, and actually by positive notice before the sale, that the debtor had but a life interest.   Nor was it then evidence of any such claim to the fee by the debtor as should have been submitted to the jury.   All that was proved was that, after the deed of trust, Snyder said "the land belonged to him;" that he "wanted to give a lease of the property;" that he "always called the place his own," and that his wife contracted to sell parts of the land in fee with his assent, and that he afterwards united with her in deeds for the parts contracted to be sold.   Nothing of this was a denial of his holding under the deed to John Reyer, and, even if it had been communicated to Christ, the plaintiff, of which there was no evidence, nothing in it would have justified a sale of the life estate without application to the court and notice to the tenant for life.   Besides, the trust-deed was on record when the levy was made. The plaintiff, being both creditor and purchaser, was bound to know that it had been made, for he was affected by the title on record.   He knew that there was but a life estate in John Snyder, if the deed was valid, and he was not at liberty to disregard the statutory prohibition of the sale of life estate without direction of the court and notice.   We think, therefore, the court should have affirmed unqualifiedly the fifth point proposed by the defendants below, which was that "if Snyder's interest in the land was a life estate only, the sale did not divest his title, unless the *venditioni exponas* on which it was sold was issued by the order of the Court of Common Pleas, on ten days' previous notice of the application for such suit to said Snyder."

We cannot say that the court erred in refusing to affirm the seventh point of the defendants below.   It is difficult, indeed, to escape from the conviction that nothing more was intended to be sold at the sheriff's sale than the interest of Mr. and Mrs. Snyder under the trust-deed.   The levy and the sale seem to have been made with that deed full in view.   If not, why was the levy made upon the land as the property of Mrs. Snyder, as well as of her husband?   She had no interest, except under the deed. But whether the plaintiff intended to assert the deed or not, was a question of fact for the jury.   Even if he did, it would not be

[Snyder v. Christ.]

conclusive upon him. Certainly the court could not declare as a conclusion of law that the plaintiff's title was based upon the trust-deed alone, and that he was estopped from denying the validity of that deed, or asserting that he bought any other title than the one conveyed by it.

The third assignment of error is not sustained, and what has already been said, shows that the fifth is unimportant.

The judgment is reversed, and a *venire de novo* awarded.