## Harlan *et al. versus* Maglaughlin *et al.*

1. The Statute of 13th Elizabeth does not make a voluntary conveyance void as to future creditors, because of an existing indebtedness, which might thereby be hindered, delayed or defeated, unless there is evidence to indicate that the grantor intended to withdraw his property from the reach of such creditors. A subsequent creditor can only avail himself of the fraud which is practised against him. *Snyder v. Christ*, 3 Wright 499, and *Monroe v. Smith*, 29 P. F. Smith 457, followed.

2. The court below instructed the jury, that where there were debts existing at the time of the conveyance and their recovery was thereby hindered, delayed or defeated, this circumstance raises a suspicion of fraud from which an intent to defraud subsequent as well as existing creditors may be inferred. *Held*, that this instruction was erroneous.

May 16th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, TRUNKEY and STERRETT, JJ. PAXSON and WOODWARD, JJ., absent.

Error to the Court of Common Pleas of *Cumberland county:* Of May Term 1879, No. 89.

Ejectment by Maud Maglaughlin and Wilmer K. Maglaughlin, by their guardian, William A. Coffey, against Anne Harlan and David Sipe for two lots in Carlisle, Pennsylvania.

On March 31st 1859, John Mell conveyed by a deed a lot of ground to Isabella Noble, wife of John B. Noble, for $50. This deed was duly recorded August 27th 1859. To the same grantee William Blair conveyed, by deed, a lot of ground on March 20th 1865, for $200, which deed was recorded March 28th 1868. On March 5th 1869, John B. Noble made a note payable to Christ. Kindler, upon which suit was brought, and judgment recovered for $129.47, with interest from 22d September 1869. A fi. fa. and vend. ex. issued upon this judgment and the above-mentioned lots were sold, as the property of John B. Noble, in 1870, to Charles E. Maglaughlin, whose heirs bring this ejectment. Isabella Noble, dying about 28th June 1875, letters of administration on her estate were issued to J. J. Good, who, under an order of the Orphans' Court of Cumberland county, sold the above lots, October 31st 1877, to David Sipe, one of the defendants.

At the trial, before Herman, P. J., the plaintiff gave evidence tending to show that John B. Noble paid for these lots, and directed the name of his wife to be used as that of the grantee therein. There was also evidence that, when the first deed was made, Noble was indebted to different parties, in the sums of $3.37, and $60, payment of which was not shown; that, in the year 1859, after the Mell deed was made, debts were contracted to the following amounts: May 10th, $18, May 20th, $45, November 29th, $39 (reduced October 14th 1861, to $35.49); in the year 1860, as follows: January 13th, $60, which was *paid;* February 22d, $21.92, like-

[Harlan v. Maglaughlin.]

wise *paid;* judgment April 14th 1860, for $5 penalty, for use of scales at suit of Borough of Carlisle; and in 1862, May 14th, $4.02, which was *paid;* another, originally $65, but, 26th November 1862, reduced to $6.50.

As evidence of fraudulent intent on the part of Noble in having these conveyances made to his wife, one Foote testified that Noble "told me before the war, in 1859, that he was in a good bit of trouble, and that he was going to put what he had, his property, over into Belle's hands. He called his wife Belle."

Among the points submitted by the defendants were the following to which are appended the answers of the court:

1. To render a voluntary conveyance void as to subsequent creditors, it must appear that it was made in contemplation of future indebtedness, and until this was shown the plaintiffs could not call upon the defendants to prove the consideration for the conveyances to Isabella Noble through whom he derives title.

Ans. "This would be so if, at the time of the voluntary conveyance, no debts of the grantor existed, the recovery of which would be thereby delayed, hindered or defeated. Where there are debts existing at the time, and the conveyance has delayed, hindered or defeated their recovery, this circumstance raises a suspicion of fraud from which an intent to defraud subsequent as well as existing creditors may be inferred."

2. Of the deeds under which defendants claim, one was made 31st March 1859, and recorded 27th August 1859, and the other was made 20th March 1865, and recorded 23d March 1868, while the debt, which was the foundation of the sheriff's sale, was not contracted until 5th March 1869, nearly ten years after first conveyance, and nearly three years after second conveyance, and there being no evidence that the said deeds were made in contemplation of future indebtedness, the plaintiff cannot recover.

Ans. "The principle invoked in this point would be correct in its application to this case if no indebtedness prior to the dates of the deeds existed to raise the suspicion of fraud. Whether the deeds were made in contemplation of future indebtedness or not is a question for the jury under all the evidence, and we submit it to them. If the deeds were made to defraud subsequent creditors, then they would be fraudulent and void and the defendants claiming title through Mrs. Noble, would have no title whatever."

3. Even if the conveyances to Mrs. Noble were void as to existing creditors of John B. Noble, at the dates of the said conveyances, they were not fraudulent and void as to subsequent creditors, unless the conveyances were intended to defraud them, or that Noble, at that time, was about engaging in some hazardous business, which would necessarily involve the capital, credit or labor of others, and no such circumstances have been shown by plaintiffs which would raise such a presumption.

[Harlan *v.* Maglaughlin.]

Ans. "We cannot charge you exactly as requested in this point, but say to you that even if the conveyances to Mrs. Noble were void as to existing creditors of John B. Noble, at the dates of the said conveyances, they were not therefore necessarily void as to Kindler, whose debt, it seems, was not contracted until 5th March 1869, unless the conveyances were intended to defraud future, as well as existing, creditors, or that Noble at the time was about engaging in some hazardous business, which would necessarily involve the capital, credit or labor of others. Does the evidence satisfy your minds that the conveyances were made with the intention of defrauding future creditors? We submit the question to the jury."

4. There could be no legal fraud, except as to creditors at time of conveyances and such subsequent creditors as might have been contemplated by Noble at those times, and as there is no evidence shown from which it can be inferred that he was about engaging in a hazardous business, or had in contemplation future indebtedness, the plaintiff cannot recover.

Ans. "There can be no legal fraud, except as to existing or subsequent creditors. To be a fraud as to subsequent creditors, there must have been an intention in the mind of Noble, at the time of the conveyances, to defraud his future creditors. We cannot say to you that there is no evidence in the case from which it can be inferred that he had in contemplation his future indebtedness. There is some evidence on the question, and it is for the jury. We cannot withdraw the case from their consideration. But, unless the evidence satisfies the jury that the conveyances were made for the purpose of defrauding the future creditors of Noble, the deeds to Mrs. Noble would not be fraudulent and void as to Kindler, on whose execution the property was sold by the sheriff; and if not fraudulent and void as to him, the plaintiffs cannot recover."

The verdict was for the plaintiffs. Defendants took this writ, and, inter alia, assigned for error the answers to the above points.

*W. Trickett, J. W. Wetzel* and *W. F. Sadler,* for plaintiffs in error.—The broad form of the instruction with respect to future creditors, in the answers which are assigned as errors, left the jury open to a misapprehension of the meaning of the word " defraud," when applied to remotely future creditors. The only conceivable sense in which the facts enumerated would make it inferable that Noble, in 1859, intended to hinder and defraud a debt which began in 1869, is that of the bare purpose to put the property in his wife, so that it should not be in danger of being taken from her by debts at any time in the future to be contracted. But this is the purpose of all settlements on wives.

The jury were in substance told that if the effect of the conveyance to the wife was to hinder and delay creditors to whom the

[Harlan *v.* Maglaughlin.]

grantor subsequently became indebted, and that the grantor, in making it, contemplated that it might have that effect, it would be fraudulent and void. This was clearly erroneous : Snyder *v.* Christ, 3 Wright 507 ; Williams *v.* Davis, 19 P. F. Smith 28.

When future creditors are deemed defrauded, it is invariably where the debts arise soon after the transfer, when the circumstances warrant the presumption of the injury to the creditor by a dependance on the continued ownership of the debtor : Williams *v.* Davis, *supra;* Nippe's Appeal, 25 P. F. Smith 478 ; Snyder *v.* Christ, *supra.* Or when some new or hazardous business is contemplated : Black *v.* Nease, 1 Wright 433 ; Monroe *v.* Smith, 29 P. F. Smith 462. The deeds here were also of record. The jury were in substance told that from the *bare fact* of debts, when the Mell deed was made, which in *fact* were hindered, &c., they can find an *expressly fraudulent intent* with respect to a debt not contracted until ten years after the recording of the Mell deed. Under this instruction, fraud in *law*, is made sufficient evidence of fraud in *fact.* Cotemporaneous debts, in fact delayed, show fraud in law ; and from this fraud in law alone, the jury are permitted to infer fraud in fact, in respect to debt originating ten years later.

*S. Hepburn, Jr.*, and *S. Hepburn*, for defendants in error.— The Statute of 13 Elizabeth protects creditors whose debts accrue subsequent to the fraudulent conveyance, equally as well as those whose debts were due when it was made : Twyne's Case, 1 Sm. L. Cas. 5 ; Townshend *v.* Windham, 2 Vesey 11 ; Taylor *v.* Jones, 2 Atk. 600 ; Anderson *v.* Roberts, 18 Johns. 526.

Where there is a voluntary settlement, and indebtedness at the time, and the recovery of these debts is delayed, hindered or defeated, such settlement is fraudulent and void, and the avoidance of it, on account of such indebtedness, lets in the subsequent creditors on the property to satisfy their debts : Thompson *v.* Dougherty, 12 S. & R. 455. The intent with which a conveyance was made, is for the jury to determine.

Mr. Justice GORDON delivered the opinion of the court, October 6th 1879.

The court below fell into an error which pervades every part of this case. A single point and answer will serve to develop this error, and determine the material questions involved in this controversy. The counsel for the defendants below, plaintiffs in error, asked the court to say to the jury that "to render a voluntary conveyance void, as to subsequent creditors, it must appear that it was made in contemplation of future indebtedness, and, until this was shown, the plaintiffs could not call upon the defendants to

[Harlan v. Maglaughlin.]

prove the consideration for the conveyance to Isabella Noble through whom they claim title." The court answered: "This would be so, if, at the time of the voluntary conveyance, no debts of the grantor existed, the recovery of which would be thereby delayed, hindered or defeated. Where there are existing debts at the time, and the conveyance has delayed, hindered or defeated their recovery, this circumstance raises a suspicion of fraud from which an intent to defraud subsequent as well as existing creditors may be inferred."

This language is borrowed from the case of Thompson v. Dougherty, 12 S. & R. 448, where it is applied, as in the case in hand, to debts contracted after the execution of the voluntary grant. It is, however, mere *obiter dicta*, not called for by the facts in the case, and not true in law. Notwithstanding the many loose declarations in the books to the contrary, the Statute 13 Elizabeth does not make voluntary conveyances void as to future creditors, unless there is some evidence to indicate that the grantor intended to withdraw his property from the reach of such creditors: Snyder v. Christ, 3 Wright 499. And it is properly said in Williams v. Davis, 19 P. F. Smith 21, that even an expectation of future indebtedness will not render a voluntary conveyance void where there is no fraud intended by such conveyance. And so, also, in Thompson v. Dougherty, Mr. Justice DUNCAN, citing Saxton v. Wheaton, 8 Wheat. 229, says, "Chief Justice Marshall decided that a post-nuptial settlement on a wife and children by a man who is not indebted at the time, was valid against subsequent creditors, and that the statute does not apply to such creditors if the conveyance be not made with a fraudulent intent." A similar ruling will be found in Townsend v. Maynard, 9 Wright 198, and in Greenfield's Estate, 2 Harris 489. In the latter case, which involved a deed of trust of all the grantor's property, it was alleged by Mr. Justice BELL, to be a sound rule of law that subsequent indebtedness cannot be invoked to invalidate a voluntary settlement made by one not indebted at the time, or who reserves sufficient to pay all existing debts, unless there be something to show that the settlement was made in anticipation of future indebtedness. It is further said that though some doubt was thrown on this principle by Thompson v. Dougherty, it was afterwards dissipated by Mateer v. Hissim, 3 P. & W. 161. Furthermore, the case of Snyder v. Christ, above mentioned, which is very like the case in hand, settled any doubts that may previously have existed as to the effect of subsequent indebtedness. For though it seems to have been generally admitted, that the statute is not operative as to such indebtedness, yet the admission has been so beclouded by apparently inconsistent *dicta* and qualifications, as to render its meaning obscure and unintelligible. The settlement is good against after contracted debts *if* the settlor is unindebted at the time, or *if* he

has made provision for existing debts, and so on. But how, if there be existing debts not provided for, and how if the settlement is fraudulent as to such debts? Will the settlement, in such case, be void as to all future indebtedness? Is there no place for repentance and atonement by the after payment of existing debts, or may after creditors, notwithstanding such payment, avoid the deed? Justice DUNCAN answers these questions by saying: "If the jury find a prior indebtedness and any of that class of creditors is defeated by the settlement, then, my opinion is, that the property conveyed is to be considered as part of the estate of the debtor for the benefit of all his creditors. I know no midway. When a statute declares a matter void it thrusts all to destruction like a tyrant, while the common law, like a nursing father, makes that void where the fault is and preserves the rest." In this, singularly enough, the fact is overlooked that the statute makes the gift or deed void, *only*, as to those who may be hindered, delayed or defrauded thereby, and that in this it follows the common law. This oversight, however, would seem to be accounted for by the fact that the opinion of Chief Justice Spencer in Anderson *v.* Roberts, 18 Johns. 526, is adopted, wherein it is said, that the Statute of 13 Elizabeth protects creditors whose debts accrue subsequently to the fraudulent conveyance equally as those whose debts were due when it was made.

It would seem to be on this that Justice DUNCAN founds the assertion, already referred to, that the existence of prior debts creates a suspicion of fraud, which can only be repelled by showing that the subsequent creditors were provided for in the settlement. This, as it stands, is unintelligible; for one cannot provide for what he does not anticipate; if he has no future debts in contemplation, how is it possible to make provision for them? It, in fact, simply amounts to saying that the statute is operative upon subsequent, as well as present, indebtedness. In like manner, it has been said, the settlor must not only retain property enough to satisfy present debts, but also to answer the reasonable probabilities of the future. But this rule is unreasonable in this, that it prevents men of limited means from making any settlement whatever upon their wives and children, a result certainly not contemplated by the statute. Besides this, the attempt to keep men and women in judicial leading strings all their lives, to direct what they shall or shall not do with their own property, is a matter which commends itself neither to sound legal reason nor to common sense. If a man is in debt, he may not give away his property until he has paid or provided for such debt; the reason for this is found in the principles of common honesty. If he contemplates future indebtedness, he must, for a like reason, provide for it, but he must not provide for what he does not anticipate, and for what may never occur. And if, without concealment, a man chooses to give

[Harlan v. Maglaughlin.]

away all his estate, or settle it upon his wife and children, what right has a subsequent creditor to complain? It did him no harm; he gave the grantor no credit because of such property; he is, therefore, neither cheated nor impoverished by such gift. Furthermore, if A., by a voluntary conveyance, defrauds B this year, how is C, whose debt has no existence until ten years after, defrauded by that same conveyance? It certainly will not do to say that because B was cheated therefore C is cheated, for between B and C there is no possible connection or privity. But if C has not been defrauded by the grant, then, if the statute means what it most expressly says, he cannot impeach it..

We turn, therefore, with satisfaction to the case of Snyder v. Christ, where we have the plain and unambiguous declaration, that the subsequent creditor can avail himself only of that fraud which is practised against himself. The doctrine thus announced is made the more positive in that it is said, if the creditor knew of the voluntary conveyance when he gave the credit, he could not be defrauded thereby, and, hence, could not impeach it.

This case, not only from the direct manner in which the principal subject of discussion is treated, but also by reason of the facts upon which it depends, must be regarded as a final determination of the question in hand.

These facts are briefly as follows: John Snyder, being the owner of a tract of one hundred acres of land, conveyed it to one John Reger, in trust for the use of himself and wife for their joint lives and the life of the survivor of them, with remainder to two children of the wife, and to such children as the grantors might have. This was all the real estate Snyder owned, and it was in proof, that at the date of the deed, his debts amounted to some $200, and that his personal property did not exceed in value $150. Furthermore, he had expressed apprehensions of a claim for damages for a breach of promise suit of marriage, and, within a few days after the making of the deed, he had borrowed $200, and had also contracted the debt, on a judgment for which the property in suit was sold.

Here, then, we have every element necessary for a test case. A voluntary deed in trust of all the grantor's real estate, providing, inter alia, for himself for life; existing debts unprovided for, and as to which this deed was undoubtedly fraudulent; no property reserved for the reasonable probabilities of the future, an immediate contraction of subsequent debts, and an expressed apprehension of a pending claim for damages. It was, nevertheless, held, that of these facts the subsequent creditor could not avail himself, unless he could further show that a fraud was intended against himself. In other words, these facts standing alone, did not make for him even a prima facie case.

Snyder v. Christ was followed in Monroe v. Smith, 29 P. F.

[Harlan *v.* Maglaughlin.]

Smith 459, in which it was said that a deed, void as to existing creditors, by reason of the grantor's fraud, is not necessarily void as to subsequent creditors; that it is bad only as to those it is intended to defraud.

It is scarcely necessary to say that these cases rule the one now under consideration. The deed of John Mell to Isabella Noble was executed on the 31st of March 1859, and was recorded in August of the same year. The deed of William Blair to Mrs. Noble was made March 20th 1865, and was recorded 28th of March 1868. The judgment of Kindler *v.* John B. Noble, upon which the property in dispute was sold, was founded on a note dated March 5th 1869, ten years after the date of the first deed, and nearly three years after the date of the second. When, in addition to this, we reflect that Noble's debts at no time were large; that the testimony of Foote relates to declarations made by Noble ten years before Kindler's debt had an existence; that there is not one particle of evidence, direct or indirect, that a fraud was intended on future creditors, we must certainly conclude that the plaintiffs had no case, and that the court should so have instructed the jury.

The judgment is reversed, and a *venire facias de novo* is awarded.