| 193 | 89 |
| 207 | ¹518 |

# H. J. Best, Charles H. Best and John Best, heirs of Eliza Best, deceased, who was an heir in remainder of Martha Hartzell, deceased, Milbre Bonham and Helen Bonham, Susan Stock and William Hartzell, being the heirs in remainder of Martha Hartzell, deceased, *v.* John B. Smith and William Paulhamus.

*Husband and wife—Postnuptial settlement—Creditors—Fraud.*

A postnuptial settlement on a wife by her husband, not indebted at the time, is good against subsequent creditors, if not made with a fraudulent intent as to them. Such a settlement, although void as against existing creditors, does not even raise a suspicion of fraud as against creditors whose debts had no existence when it was made.

Where a husband conveys real estate to his wife for a consideration named, and many years afterwards contracts a debt, there is no presumption that the conveyance was in fraud of the creditor's rights, and the wife is not bound to prove as against such a creditor that she paid the consideration money out of her separate estate.

Argued April 10, 1899. Appeal, No. 241, Jan. T., 1898, by defendants, from order of C. P. Luzerne Co., Dec. T., 1897, No. 139, overruling exceptions to report of referee. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ. Affirmed.

Exceptions to report of referee, Thomas H. Atherton, Esq. The facts appear by the opinion of the Supreme Court.

*Error assigned* was in overruling exceptions to auditor's report.

*George S. Ferris*, for appellants.—The law does not presume the existence of a separate estate. The onus of establishing it

is on the wife : Eavenson v. Pownall, 182 Pa. 587 ; Wilson v. Silkman, 97 Pa. 509 ; Taylor v. Paul, 6 Pa. Superior Ct. 491 ; Billington v. Sweeting, 172 Pa. 161.

While in practice the contestant generally is a creditor, and the husband generally insolvent, these cases clearly decide that neither of those facts is the criterion of decision : Auble v. Mason, 35 Pa. 262 ; Winter & Hartman v. Walter, 37 Pa. 155 ; Rhoads v. Gordon, 38 Pa. 277 ; Wieman v. Anderson, 42 Pa. 311 ; Baringer v. Stiver, 49 Pa. 129 ; Bollinger v. Gallagher, 144 Pa. 205 ; Lochman v. Brobst, 102 Pa. 481.

*John E. Jenkins* and *Henry A. Fuller*, for appellees, cited Gamber v. Gamber, 18 Pa. 363 ; French v. Mehan, 56 Pa. 286 ; Nippes's App., 75 Pa. 472 ; Thompson v. Thompson, 82 Pa. 378 ; Conley v. Bentley, 87 Pa. 47 ; 2 Story's Equity Juris. sec. 1204 ; Bispham's Equity, sec. 84 ; Adams's Equity, p. 101 ; Kimble v. Smith, 95 Pa. 69 ; Haak's App., 100 Pa. 63 ; Buckley v. Duff, 114 Pa. 603.

OPINION BY MR. JUSTICE DEAN, October 6, 1899 :

This is an ejectment for about one acre of land in the borough of Wyoming, Luzerne county. It appeared at the trial before the referee, to whom the issue was referred by the court below, under the act of April 6, 1869, that on September 26, 1848, Jacob I. Shoemaker, the unquestioned owner of the land, conveyed it by deed to Martha, wife of William Hartzell ; the wife, then, by a deed in which the husband joined, dated December 23, 1874, for the consideration of $200 and natural love and affection, conveyed the same land to their daughter Helen ; then, about three years afterwards, October 4, 1877, for the consideration of $200 she reconveyed the property to her mother, Martha Hartzell, who in 1889 died, leaving a will, dated August 4, 1884, by which she devised the property to her husband for life, with remainder to these plaintiffs, her children. William Hartzell, the husband, died December 5, 1895. On June 2, 1880, John B. Smith obtained a judgment in the common pleas of Luzerne county against William Hartzell, the husband, which judgment was kept revived until September 7, 1895, when execution was issued and the lot sold at sheriff's sale ; it was purchased by Smith, the judgment creditor, who by his

tenant, Paulhamus, immediately after Hartzell's death, entered into possession, claiming under the sheriff's deed. The remainder-men, these plaintiffs, then instituted this ejectment, claiming title under their mother's will.

The referee, on both facts and law, found for plaintiffs. It was, however, contended earnestly before him and here on appeal, on the authority of Gamber v. Gamber, 18 Pa. 363, decided in 1852, less than four years after the passage of the act of 1848, that as against a creditor, the land was the husband's. The general language used by BLACK, C. J., who delivered the opinion in that case, would at first blush rule this one; but notice the facts in that case. There the husband had himself purchased a carriage; the contract had been made by him with the manufacturer, and it was delivered to and used by him for the comfort and convenience of the family; he died insolvent; his wife claimed the carriage as hers, as against her husband's creditors, on proof of declarations of the husband that he had bought it for her and paid for it with her money. This is what this Court said in view of the facts: "Where property is claimed by a married woman, she must show by evidence which does not admit of a reasonable doubt, either that she owned it at the time of her marriage, or else acquired it afterwards by gift, bequest or purchase." The question in the case was, who had title to the article of personalty bought by and in possession of the husband? The court ruled on the measure of proof necessary under such circumstances to establish title in the wife as against her husband's creditors. The question as to whether the attempt was to defraud the particular creditors who made claim at her husband's death was not even suggested; it was assumed, on both sides in the court below and in this Court, that if she had not bought the carriage with her own money it would be a fraud on the husband's creditors to allow her on the evidence presented to successfully assert claim thereto after his death. This Court held the evidence was wholly insufficient to sustain it. But suppose she had proved that she bought the carriage years before her husband's death with money given to her by him for that purpose; that he at the time and for years afterwards owed nobody, and that thereafter she claimed and he acknowledged the carriage to be hers while it was in use, the general language adopted by Chief Jus-

tice BLACK would have had no application; the question would
have been whether the gift was made with intent to defraud.
Gamber v. Gamber was followed afterwards in many cases
presenting similar facts, and is unquestionably the law.   But
long before the act of 1848, as well as since, it has been re-
peatedly held by this Court that a postnuptial settlement on a
wife by a husband, not indebted at that time, is good against
subsequent creditors, if not made with a fraudulent intent as
to them.   The very purpose of an honest voluntary settlement
on a wife is to secure a provision for her against contingencies
to which every honest business man is subject; not to secure
her against particular debts which he intends to contract, or
against disasters in a hazardous business which he proposed to
engage in, for in either case such settlement would be fraudu-
lent, but against those misfortunes in business which are re-
mote, and cannot with certainty be anticipated.

The distinction between a lawful voluntary settlement and
a fraudulent one is noticed in Greenfield's Estate, 14 Pa. 489,
Snyder v. Christ, 39 Pa. 499, Townsend v. Maynard, 45 Pa.
198, Williams v. Davis, 69 Pa. 21, and then in Harlan v. Mag-
laughlin, 90 Pa. 293.   In this last case, Justice GORDON de-
livered the opinion of the Court; he thoroughly discusses the
subject and clearly points out the distinction between a law-
ful settlement under the statute of 13th Elizabeth and a fraud-
ulent one, citing almost all the authorities in this state bearing
on the subject, and emphatically announcing the conclusion of
the Court that a subsequent creditor can only avail himself of
a fraud practiced against him; that a deed void as against
existing creditors did not even raise a suspicion of fraud as
against creditors whose debts had no existence when it was
made.

In view of the law as thus clearly settled, look at the facts
of this case; those claiming under the mother's will did not at-
tempt to prove that she ever paid one dollar for the property which
she devised to her children; but the record showed that it had
been conveyed to her by Shoemaker in 1848; then, after stand-
ing in her name and being occupied by her for twenty-five years,
she, joined by her husband, conveys it to her daughter, without
change of possession; the daughter held it in her name for three
years, and then reconveyed to the mother, and the deed is put

of record; three years afterwards, in 1880, while the mother and husband were still in the occupancy of the land, Smith obtained judgment against the husband, and on it sold his interest, and under that deed went into and claimed possession after the husband's death, against the devisees of the wife. What title had the husband as between him and his creditors? The creditor's debt, so far as is proved, had no existence prior to 1880; the wife's title from Shoemaker was thirty-two years before; certainly, plaintiffs were not bound to prove that the $200 consideration in that deed had been obtained from a source other than her husband; suppose he did furnish the money, he had a right to do so as against a creditor who may not then even have been born. But, assume that her title dated only from the reconveyance by the daughter, which antedated the debt only three years; the evidence clearly showed that the mother had an estate to the value of the land when she conveyed to the daughter, and it tended to show that the daughter, not desiring to pay, reconveyed to the mother; assume, the husband paid the $200 consideration to the daughter, the deed was placed of record, and with that before his eyes, three years afterwards, Smith, the creditor, contracted with the husband his debt; there is nothing in this evidence that warrants a presumption that when the husband furnished his wife $200 he intended to defraud Smith, a creditor who had no existence until three years afterwards. If such were the fact, the creditor was bound to prove it by proper evidence; there was no presumption of fraud in his favor.

It is a matter of surprise to us that since Harlan v. Maglaughlin, supra, the distinction there so clearly pointed out between a lawful settlement on a wife, as against creditors, and a fraudulent one, is still unperceived by some counsel; more than once since that decision we have been forced to call attention to it, as we again do now. All the assignments of error are overruled, and the judgment is affirmed.