## Dayen's Estate.

*Robert Levin*, for exceptant; *Moore, Gossling & Panfil*, contra.

THOMPSON, J., March 8, 1929.—The decedent died Dec. 24, 1927, intestate, leaving as her next of kin her husband, Harry Dayen, and her father, Labe Batkin, and no children. At the audit of the administrator's account in December, 1928, the husband of the decedent claimed as his individual property certain assets which stood in the name of the decedent at the time of her death and more particularly hereinafter described. The Auditing Judge rejected said claim, and claimant has filed exceptions thereto.

We have read the testimony taken before the Auditing Judge with care, and from the same it appears that the claimant was a baker and a member of a labor union named "Consumer's Baking Company Union, Local No. 201." In December, 1924, this union was on a strike and there was litigation pending in the courts between the employers and the union. In that month the claimant had on deposit to his credit with the Philadelphia Saving Fund Society of this city the sum of $5451.75 and a mortgage of $4000 in his name, both of which he transferred to his wife, the decedent. This mortgage was subsequently collected and forms part of the assets in the hands of the administrator. About two years later a mortgage of $1000 was taken in the name of the decedent, which claimant alleges represents his money and that it belonged to him.

The claimant was disturbed about the above litigation, evidently having in mind the case of Lawlor *v.* Loewe, known as the Danbury Hatter's Case, 235 U. S. 522 (January, 1915), in which the members of a labor union were held personally responsible in damages for losses sustained by the employers by reason of the unlawful acts of the officers of the union committed with the knowledge and consent of its members. While there is no direct evidence that claimant knew of the Danbury Hatter's Case, yet there is evidence that when the claimant and his wife went to the saving fund society in December, 1924, to transfer the savings account from his name to his wife's name they met another member of the union named Walman, with his wife, Bella, and in the conversation that ensued Bella Walman told the decedent that her husband was doing the same thing that Mr. Dayen was doing, that is, putting the account in her name, thus showing that members of the union discussed the possible result of the litigation in question and were transferring their assets to their wives' names. In addition to this, the claimant consulted a real estate broker named Pollock, who testified that he advised claimant as follows: "I do not think it is that terrible, but if you want to be 100 per cent. safe, if you can trust your wife, you can assign the mortgage and the bank account to her and she can hold it for you until this trouble will be over."

It thus clearly appears that claimant was transferring his property to his wife's name to avoid the possible disastrous result of a certain pending litigation in which he might be liable.

It is argued on behalf of the claimant that as there were no judgments against him and he was not at the moment indebted, the transaction was not fraudulent, but with this contention we cannot agree. The transfers were made in anticipation of a future specific liability and claimant can get no relief in the courts when he attempts to do a fraudulent act. He does not come into court with clean hands, and the law will leave him just where he has placed himself and not lend its aid to recover back property transferred in fraud of creditors, even though it should subsequently appear that he had made settlements with his creditors. In the present case, counsel stated at the argument that the litigation above referred to, the nature of which the evidence does not disclose, was still undetermined of record.

In Buckwalter Stove Co. v. Edmonds, 283 Pa. 236, 239, it was held: "Where, as here, a solvent husband buys land and takes title thereto in the name of his wife, it is presumed to be a gift from him to her (Gassner v. Gassner, 280 Pa. 313; Guarantee Building and Loan Ass'n v. Thomas, 207 Pa. 513; Earnest's Appeal, 106 Pa. 310; Bowser v. Bowser, 82 Pa. 57; Townsend v. Maynard, 45 Pa. 198; and see Thompson v. Allen, 103 Pa. 44; Thompson v. Thompson, 82 Pa. 378; Nippes's Appeal, 75 Pa. 472), and vests in her both the legal and equitable title. In other words, a husband's post-nuptial settlement of property upon his wife is valid except as to existing or contemplated creditors: Best v. Smith, 193 Pa. 89."

And in Best v. Smith, 193 Pa. 89, 92, it was said: "But long before the Act of 1848, as well as since, it has been repeatedly held by this court that a post-nuptial settlement on a wife by a husband, not indebted at that time, is good against subsequent creditors if not made with a fraudulent intent as to them. The very purpose of an honest voluntary settlement on a wife is to secure a provision for her against contingencies as to which every honest business man is subject; not to secure her against particular debts which he intends to contract or against disasters in a hazardous business which he proposed to engage in, for in either case such settlement would be fraudulent, but against those misfortunes in business which are remote and cannot with certainty be anticipated."

In Westmoreland Guarantee Building and Loan Ass'n v. Thomas, 207 Pa. 513, it was held that a husband who is not in debt and is not contemplating entering into a hazardous business may convey his property to his wife, and subsequent creditors have no grounds for complaining of such conveyance. The court said (page 517): "Nor is there a particle of evidence . . . that at that time Thomas anticipated either becoming indebted to these parties or entering into any business, hazardous or otherwise."

In Buckley v. Duff & Sons, 114 Pa. 596, 603, it is said: "If the transaction is not fraudulent as to existing creditors, and in this case, as we have said, there were none, subsequent creditors can avoid the sale only under special circumstances, as, for instance, by showing that it was made with a view to incurring liability or to provide against the contingencies of a hazardous business which gave rise to their debts; and cases of this character are ordinarily under proper instructions for the determination of a jury. Such is the doctrine of Snyder v. Christ, 39 Pa. 499; Monroe v. Smith, 79 Pa. 459; Harlan v. Maglaughlin, 90 Pa. 293. Although the cases cited relate to transfer of real estate, the rule is alike applicable on questions affecting the sales of personal property."

"Where a conveyance is made with a view to entering into some new and hazardous business, the risk of which the grantor intended should be cast

upon the parties having dealings with him in the new business, it is fraudulent as to subsequent creditors:" 27 Corpus Juris, 522, § 200 c.

In Sager v. Mead, 171 Pa. 349, the second paragraph of the syllabus is as follows: "An Orphans' Court sale for the payment of debts will not be set aside where the family entered into an agreement that the land should be sold and bought in by them, and where the plaintiff was a party to all the proceedings sought to be invalidated, and where she still continues to hold all the benefits which came to her out of the proceedings. She will be bound by the proceedings if they were bona fide, and she will not be permitted to assert her own fraud to attack them if they were fraudulent."

In Matlack v. Bank, 180 Pa. 360, 379, it was said: "And in addition to all this, it is a rule that a chancellor will not assist a party to obtain any benefit arising from a fraud. He must come into a court of equity with clean hands. It would be a singular exercise of equity which would assist a party, who had paid money to enable him to perpetrate a fraud, to recover his money just when the chancellor was engaged in thrusting out of the way of his doing equity to the injured party the very instrument of the fraud. He who does iniquity shall not have equity: Hershey v. Weiting, 50 Pa. 244."

The exceptions are dismissed and the adjudication confirmed absolutely.